675 A.2d 216

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ISAAC
WRIGHT, JR., DEFENDANT–RESPONDENT.

Argued March 12, 1996—Decided May 8, 1996.

*James L. McConnell,* Special Deputy Attorney General, Acting
Assistant Prosecutor, argued the cause for appellant (*Melaine B.
Campbell,* Deputy Attorney General, Acting Somerset County
Prosecutor, attorney).

*Vito A. Sciancalepore,* Designated Counsel, argued the cause
for respondent (*Susan L. Reisner,* Public Defender, attorney).

*Isaac Wright, Jr.* submitted a supplemental brief *pro se.*

PER CURIAM.

The defendant Isaac Wright, Jr. was found guilty and convicted of the following crimes: leading a narcotics trafficking network, contrary to *N.J.S.A.* 2C:35–3 (count one); conspiracy to distribute cocaine, contrary to *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:5–2 (count two); possession of cocaine in a quantity of five ounces or more with intent to distribute, contrary to *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(1) (counts three, six and seven); possession of cocaine within 1,000 feet of school property, contrary to *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–7 (count four); possession of cocaine, contrary to *N.J.S.A.* 2C:35–10a(1) (count five); possession of cocaine in a quantity of a half-ounce or more with the intent to distribute, contrary to *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(2) (count eight); employing a juvenile in a drug distribution scheme, contrary to *N.J.S.A.* 2C:35–6 (count eleven); and maintaining or operating a controlled dangerous substance manufacturing facility, contrary to *N.J.S.A.* 2C:35–4 (count twelve). These charges were part of an eighteen count indictment in which defendant and eleven other individuals were named as defendants.

Defendant was sentenced as follows: for count one, a mandatory life term with a twenty-five year period of parole ineligibility and a $25,000 fine; and for count eleven, a consecutive ten-year custodial term with a five-year period of parole ineligibility and a $10,000 fine. Count five was merged with count three, and on counts three, six, seven, and twelve, defendant received concurrent custodial terms of fifteen years with a five-year period of parole ineligibility. On count two, defendant was sentenced to a concurrent ten-year custodial term; on count eight, a concurrent seven-year custodial term; and on count four, a concurrent five-year custodial term with a three-year period of parole ineligibility. Defendant was also assessed DEDR penalties totaling $20,000, a total lab fee of $400, and Violent Crimes Compensation Board penalties of $270. Defendant's driver's license was revoked for forty-eight months.

In a *per curiam* opinion, the Appellate Division below affirmed all the convictions except the conviction for leading a narcotics trafficking network. It determined that the jury instruction regarding the defendant's drug-kingpin status was inadequate. One judge of the Appellate Division issued a limited dissent, reasoning that the conviction for leading a narcotics trafficking network should not be reversed because that charge was supported by substantial evidence and, in light of that evidence, the jury was not misled by the inadequate instruction.

The State appealed as of right on the sole issue of the jury charge regarding the defendant's drug kingpin status..

We concur in the conclusion of the Appellate Division that would reverse the jury's conviction of defendant under *N.J.S.A.* 2C:35–3, and agree with the reasoning expressed in its *per curiam* opinion. Because that opinion is unreported, we set forth the relevant portion of the Appellate Division's opinion, *viz:*

> We begin our analysis by specific reference to *N.J.S.A.* 2C:35–3, which provides, in pertinent part:
>
>> A person is a leader of a narcotics trafficking network if he conspires with others as an organizer, supervisor, financier or manager, to engage for profit in a scheme or course of conduct to unlawfully manufacture, distribute, dispense, bring into or transport in this State ... any controlled dangerous substance classified in Schedule I or II, or any controlled substance analog thereof. Leader of narcotics trafficking network is a crime of the first degree and upon conviction thereof, ... a person shall be sentenced to an ordinary term of life imprisonment during which the person must serve 25 years before being eligible for parole....
>>
>> Notwithstanding the provisions of N.J.S. 2C:1–8, a conviction of leader of narcotics trafficking network shall not merge with the conviction for any offense which is the object of the conspiracy....
>>
>> It shall not be necessary in any prosecution under this section for the State to prove that any intended profit was actually realized. The trier of fact may infer that a particular scheme or course of conduct was undertaken for profit from all of the attendant circumstances, including but not limited to the number of persons involved in the scheme or course of conduct, the actor's net worth and his expenditures in relation to his legitimate sources of income, the amount or purity of the specified controlled dangerous substance or controlled substance analog involved, or the amount of cash or currency involved.
>
> [*N.J.S.A.* 2C:35–3.]

The Supreme Court evaluated this statute on two occasions. In *State v. Afanador*, 134 *N.J.* 162, 631 *A.*2d 946 (1993), *N.J.S.A.* 2C:35–3 was declared constitutionally valid and enforceable legislation which was neither facially vague nor vague as applied to defendant Afanador.

Thereafter, in *State v. Alexander*, 136 *N.J.* 563, 643 *A.*2d 996 (1994), the Court, persuaded by Justice O'Hern's dissent in *Afanador, supra*, 134 *N.J.* at 179–86, 631 *A.*2d 946 (O'Hern, J., dissenting), concluded that a correct jury charge "must relate the terms of the statute, such as 'organizer, supervisor, financier, or manager' to the legislative purposes to target profiteers and kingpins in the upper echelons of the drug trade." *Afanador, supra*, 134 *N.J.* at 186, 631 *A.*2d 946 (O'Hern, J., dissenting). The *Alexander* decision specifically outlined the elements of a proper jury instruction where a defendant is indicted for a violation of *N.J.S.A.* 2C:35–3:

> Thus, a proper instruction should, in addition to reciting the statutory language of *N.J.S.A.* 2C:35–3, at least inform the jury that it must find that the defendant occupies a high-level position of authority in the scheme of distribution (or manufacture or dispensing or transporting, as the evidence may permit). A court should instruct the jury that a defendant's position and status must be at a superior or high level in relation to other persons in the drug trafficking network and that the defendant's role must be that of a "leader" in the drug organization or system and, in that capacity, the defendant exercised supervisory power or control over others engaged in the organized drug-trafficking network.
>
> ... A "high level" or "upper-echelon" "leader" of such an organization is one who occupies a significant or important position in the organization and exercises substantial authority and control over its operation. Neither the specific elements enumerated in the provisions of *N.J.S.A.* 2C:35–3 nor the additional requirements extrapolated from the statute's statement of purpose indicate that a drug operator exercising authority and controlling other people in an organization or network, even at the street level, could not be a "leader" or "drug kingpin" within the contemplation of the Legislature. Rather, the role of a defendant as a leader or drug kingpin turns more on the nature of that person's authority, the magnitude or extent of control, and the number of persons over whom that power is exercised.
>
> An appropriate instruction should also amplify the other statutory terms that are expressed as material elements of the crime under *N.J.S.A.* 2C:35–3. Thus, the statutory terms "organizer, supervisor, financier or manager" should be explained so that the meaning of those terms is more fully understood by the jury. For example, the court might define an "organizer" as a person who arranges, devises, or plans a drug-trafficking network; a "supervisor" as one who oversees the operation of a drug-trafficking network; a "financier" as one who is responsible for providing the funds or resources necessary to operate a drug-trafficking network; and a "manager" as one who directs the operations of a drug-trafficking network.
>
> [*Alexander, supra*, 136 *N.J.* at 574–75, 643 *A.*2d 996.]

The Supreme Court reversed Alexander's conviction based on the trial court's failure to articulate the material elements of the crime in its jury charge.

The Appellate Division, observing that this trial occurred prior to the decision in *Alexander,* pointed out that "the trial judge simply read *N.J.S.A.* 2C:35-3" and essentially paraphrased the statutory provisions with minimal amplification. The instruction did not define or explain the role of a leader or drug kingpin or the necessity for the jury to make a determination that defendant performed such a role.

The Appellate Division stated further in its opinion:

> It is clear that the court, without the benefit of the *Alexander* instruction, failed to incorporate in its charge those statements of legislative policy and purpose particularized in *N.J.S.A.* 2C:35-1.1, which the Supreme Court deemed a "material element of the crime." *Alexander, supra,* 136 *N.J.* at 570, 643 *A.*2d 996. The absence of a charge which articulates the material elements of the crime charged requires reversal of defendant's conviction on count one of this indictment.

We are satisfied that, in the circumstances, the adequacy of the evidence did not counteract or overcome the inadequacy of the instruction that failed to require the jury to consider and determine the existence of a critical and material element of the crime charged. Accordingly, we affirm the judgment of the Appellate Division.

*For affirmance*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.