778 A.2d 443

ISAAC WRIGHT, ADRIEL MCNAIR, A/K/A SUNSHINE WRIGHT AND SANDRA WRIGHT, GUARDIAN FOR TIKEALLA WRIGHT, A MINOR, PLAINTIFFS, v. STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND THE OFFICE OF THE PROSECUTOR OF SOMERSET COUNTY; THE OFFICE OF THE PROSECUTOR OF MIDDLESEX COUNTY; THE OFFICE OF THE PROSECUTOR OF PASSAIC COUNTY; MIDDLESEX COUNTY, NJ; PASSAIC COUNTY, NJ; FRANKLIN TOWNSHIP, NJ; EDISON TOWNSHIP, NJ; PASSAIC CITY, NJ; BARBARA J. BISSELL, EXECUTRIX OF THE ESTATE OF NICHOLAS L. BISSELL, JR.; PETER DEMARCO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; RICHARD THORNBURG, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; ANDREW RACZ, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; RICHARD A. MYERS, INDIVIDUALLY AND IN HIS OFFICIAL CA-

PACITY; JAMES DUGAN, INDIVIDUALLY AND IN HIS OFFI-
CIAL CAPACITY; SCOTT FABIANO, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY; RUSSELL KINGSLAND, INDIVID-
UALLY AND IN HIS OFFICIAL CAPACITY; LINDA WISHART,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; SAM
DEBELLA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACI-
TY; TIMOTHY WENZEL, INDIVIDUALLY AND IN HIS OFFI-
CIAL CAPACITY; NANCY DONALON, INDIVIDUALLY AND
IN HER OFFICIAL CAPACITY; RONALD KUSHNER, INDI-
VIDUALLY AND IN HIS OFFICIAL CAPACITY; JOSEPH KRI-
ZA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; KEN
EUBER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
THOMAS MALTESE, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; CHRIS INGRAM, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY; JOHN ZANKOWICK, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY; LOUIS KIRSH, INDIVIDU-
ALLY AND IN HIS OFFICIAL CAPACITY; JAMES FERGUSON,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; JOSEPH
LOMBARDO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACI-
TY; JOHN KENNY, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; JOSEPH FEZZA, INDIVIDUALLY AND IN HIS OF-
FICIAL CAPACITY; OTIS DANIELS, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY; JOHN CARAVANNA, INDIVIDU-
ALLY AND IN HIS OFFICIAL CAPACITY; RICHARD HUR-
LEY; TERRENCE D. DZURA; MICHAEL R. IMBRIANI, INDI-
VIDUALLY AND IN HIS OFFICIAL CAPACITY; BEN TANG;
JOSEPH RHETTO; AUTO SPORT VOLVO, INC.; ACME MO-
TORS; JOHN DOE (S) (1–100), INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY; JANE DOE (S) (1–100), INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY AND ABC BUSINESS EN-
TITIES (1–10); DEFENDANTS, AND SOMERSET COUNTY, NJ;
VERONICA NOLAN, INDIVIDUALLY AND IN HER OFFICIAL
CAPACITY; ROBERT SMITH, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AND STUART BUCKMAN, INDIVIDU-
ALLY AND IN HIS OFFICIAL CAPACITY; DEFENDANTS–AP-
PELLANTS.

Argued April 30, 2001—Decided July 31, 2001.

428

*Arthur S. Goldstein* argued the cause for appellant Somerset County, NJ (*Wolff & Samson*, attorneys; *Mr. Goldstein* and *Kenneth N. Laptook*, of counsel; *Andrew C. Samson* and *Junie Hahn*, on the briefs).

*Larry R. Etzweiler*, Senior Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney; *Nancy Kaplen, Jeffrey J. Miller* and *Michael J. Haas*, Assistant Attorneys General, of counsel).

*Sonya M. Longo* submitted a letter in lieu of brief on behalf of appellant Robert Smith (*Budd Larner Gross Rosenbaum Greenberg & Sade*, attorneys).

*Steven L. Kleppe* submitted a letter in lieu of brief on behalf of appellant Veronica Nolan (*Cole, Schotz, Meisel, Forman & Leonard*, attorneys).

*Richard A. Norris* on behalf of appellant Stuart Buckman relied upon the briefs submitted on behalf Somerset County, NJ (*Norris, McLaughlin & Marcus*, attorneys).

The opinion of the Court was delivered by

STEIN, J.

This is an interlocutory appeal arising from a civil action for false arrest, invasion of privacy, malicious prosecution, false imprisonment, and other causes of action against several defendants including thirteen employees of the Somerset County Prosecutor's Office (SCPO). We must determine whether pursuant to the relevant provisions of the Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 12–3, the State of New Jersey is vicariously liable for the

actions of the SCPO's employees and whether the State is required to indemnify and defend them. The trial court held that the State was neither vicariously liable for the SCPO's employees' conduct nor required to defend and indemnify them. The Appellate Division denied appellants' motions for interlocutory review.

We reverse. We hold that the State may be held vicariously liable for the tortious conduct of the SCPO's prosecutors and investigative subordinates during the investigation, arrest and prosecution of Isaac Wright and that the State may be required to indemnify and defend those prosecutors and subordinates in respect of the claims alleged by Wright in this litigation.

I

In 1989, the SCPO, along with other law enforcement agencies, conducted a lengthy investigation concerning plaintiff Isaac Wright's leadership of a drug distribution network extending throughout the counties of Somerset, Middlesex, and Passaic. That investigation culminated in July 1989, when Wright, as well as several of his co-conspirators, were arrested for numerous violations of the narcotics laws. In August 1989, Wright was indicted and charged with leading a narcotics trafficking network, contrary to *N.J.S.A.* 2C:35–3; possession of cocaine with intent to distribute, contrary to *N.J.S.A.* 2C:35–5a(1), *N.J.S.A.* 2C:35–5b(1), and *N.J.S.A.* 2C:35–5b(2); maintaining or operating a narcotics production facility, contrary to *N.J.S.A.* 2C:35–4; and conspiracy to distribute cocaine, contrary to *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:5–2. *State v. Wright*, 143 *N.J.* 580, 581, 675 *A.2d* 216 (1996). In April 1991, following a trial, the jury found Wright guilty of all charges alleged against him in the indictment. *Ibid.* The trial court sentenced Wright to an aggregate term of life imprisonment with a thirty-year period of parole ineligibility. *Ibid.*

In July 1991, Wright and his wife, Adriel McNair, filed a lawsuit alleging false arrest, invasion of privacy, malicious prosecution, false imprisonment, assault and battery, loss of consortium, and

other causes of action. The complaint also included allegations that defendants beat Wright at the time of his arrest, suborned perjury, and illegally searched his prison cell. The named defendants included, among others, Somerset County and its prosecutor's office, Middlesex County and its prosecutor's office, Passaic County and its prosecutor's office, Franklin Township and its police department, the City of Passaic and its police department, twenty past and present employees of prosecutors' offices, three municipal police officers, one municipal prosecutor, and the State of New Jersey. Wright alleged that former Somerset County Prosecutor Nicholas L. Bissell, Jr., and several employees of the SCPO including individual appellants Veronica Nolan (Assistant Prosecutor), Stuart Buckman (Detective), and Robert Smith (Deputy Chief of Detectives), among others, acted to effect his false arrest and to invade his privacy.

In 1995, in an unreported opinion, the Appellate Division affirmed all of Wright's convictions except the conviction for leading a narcotics trafficking network. *See Wright, supra,* 143 *N.J.* at 582, 675 *A.*2d 216. The Appellate Division determined that the jury instruction regarding Wright's drug-kingpin status was inadequate. *Ibid.* In 1996, this Court affirmed the Appellate Division's decision. *Ibid.* Wright subsequently filed a motion for post-conviction relief seeking to have his remaining convictions reversed, alleging prosecutorial and police misconduct throughout the investigation, arrest, grand jury proceedings, and trial. In December 1997, the Law Division reversed Wright's remaining convictions after an evidentiary hearing on Wright's petition for post-conviction relief. The court found that high-ranking Somerset County law-enforcement officials concealed evidence of the illegal search for and seizure of cocaine used at Wright's trial. The court also found that former Somerset County Prosecutor Bissell knew about, but concealed, the terms of a favorable plea agreement with one of the co-defendants who was a State's witness at Wright's trial. Following the court's decision, the indictment against Wright was dismissed without prejudice.

Plaintiffs' initial civil complaint joined as defendants all of the appellants in this appeal with the exception of Veronica Nolan and the State of New Jersey, who both were joined in the second amended complaint. However, the second amended complaint was not served with a summons on the Attorney General as required by *Rule* 4:4–4(a)(7) for the institution of a civil lawsuit against the State. The State subsequently was joined as a defendant with the filing of plaintiffs' third amended complaint in August 1998, and the service of a summons on the State in November 1998.

In February 1997, prior to the State's joinder, appellant Somerset County sent the Attorney General a letter requesting representation and indemnification on behalf of the SCPO's employees whom Somerset County was then representing. The Attorney General declined Somerset County's request. In September and October of 1998, appellants Veronica Nolan, Stuart Buckman, and Robert Smith, as well as other defendants in the action including both prosecutorial employees and municipal police officers, filed cross-claims demanding that the State provide them with indemnification and legal representation, but none of those parties served the cross-claims on the State. In March 1999, the trial court ordered appellants and other cross-claiming defendants to serve their cross-claims on the State.

In a motion initially filed in February 1999, and in a supplemental motion filed in April 1999, the State moved for summary judgment dismissing plaintiffs' third amended complaint as well as all cross-claims demanding indemnification and representation. The appellants and other defendants cross-moved for summary judgment on their cross-claims against the State for vicarious liability, indemnification and defense costs.

In August 1999, the trial court issued an order holding that Somerset County was liable for defense and indemnification of the SCPO's employees. The court relied partly on an unpublished federal court opinion holding that Somerset County, and not the State, was responsible for legal fees incurred in defending a

county prosecutor. The trial court held that Somerset County was collaterally estopped from seeking defense costs from the State because the same issue had been litigated in the federal court. The trial court also relied on *Michaels v. State of New Jersey*, 968 *F.Supp.* 230 (D.N.J.1997), *aff'd*, 150 *F.*3d 257 (3d Cir.1998) (holding that there was no authority to support finding that prosecutorial defendants are "State employees" within meaning of *N.J.S.A.* 59:10–1 and *N.J.S.A.* 59:10A–1), to conclude that the State was not required to defend and indemnify Somerset County and the SCPO employees.

The trial court did not decide the issue of vicarious liability, noting that discovery was not complete. However, the trial court indicated that its decision regarding that issue would depend on whether responsibility for the actions of SCPO employees was a function of administrative oversight, for which the county would be responsible, or a function of law enforcement duties, for which the State would be vicariously liable. Thus, the trial court granted the State's motion for summary judgment on the issue of defense and indemnification, and denied the summary judgment motions of the State as well as Somerset County and the other counterclaimants with respect to the issue of vicarious liability.

Both Somerset County and the State moved for reconsideration of the trial court's August 1999 decision. In January 2000, the trial court issued its interlocutory opinion and order responding to appellant Somerset County's reconsideration motion. The trial court denied Somerset County's request for reconsideration. In the statement of reasons attached to the order, the trial court reiterated its earlier determination that the incompleteness of discovery precluded it from deciding the vicarious liability issue. Regarding the issue of indemnification and defense costs the trial court amended the language of the August 1999 order to read as follows: "Since a prosecutor's office is not a public entity capable of being sued, and having concluded that the State is not obligated for these costs, payment of these costs must be resolved between the county and its prosecutorial employees."

In February 2000, the trial court issued its interlocutory opinion and order granting summary judgment to the State on all claims that it was vicariously liable for the acts of the county prosecutors or their employees. The trial court stated that "[w]hile the State may have supervisory powers over the county prosecutors' offices, no statute or case law directly imposed economic obligations on the State for these offices." The trial court also stated that it was "satisfied that any public entity obligation for a county prosecutor's office, including for vicarious liability for negligent acts in carrying out law enforcement duties, should not be imposed on the State." Thus, the trial court ruled in favor of the State on the issue of vicarious liability and dismissed the remaining counts of the third amended complaint.

According to the State, Somerset County, as well as all the individual appellants, except Stuart Buckman, sought interlocutory review and reversal of the Law Division's January 2000 order. In addition, appellants Somerset County, Robert Smith, and Stuart Buckman sought interlocutory review and reversal of the Law Division's February 2000 order granting the State summary judgment with respect to vicarious liability for the employees of the SCPO. Appellant Veronica Nolan did not seek review of that issue.

In April 2000, the Appellate Division denied interlocutory review of both orders. Each appellant, Somerset County, Veronica Nolan, Stuart Buckman, and Robert Smith, filed a motion in this Court seeking reversal of each Appellate Division order denying interlocutory review. In December 2000 we granted those motions for interlocutory review.

## II

### A

A threshold issue in this appeal is whether the State should be held vicariously liable for the alleged tortious conduct of the SCPO's employees during the investigation, arrest, and prosecu-

tion of Isaac Wright. "The New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1, et seq., effective July 1, 1972, is dispositive, with respect to causes of action in tort accruing on and after that date, of the nature, extent and scope of state and local tort liability and the procedural requisites for prosecuting tort claims against governmental agencies." Pressler, *Current N.J. Court Rules,* comment 17.1 on *R.* 4:5–4 (2001). Thus, this case is governed by the TCA. *N.J.S.A.* 59:1–2. The provision relevant to the issue of the vicarious liability of a public entity provides: "A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." *N.J.S.A.* 59:2–2(a). The TCA defines "[p]ublic entity" as including "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." *N.J.S.A.* 59:1–3. It defines "[p]ublic employee" as an "employee of a public entity," and an employee as "includ[ing] an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided however, that the term does not include an independent contractor." *Ibid.* The comment to *N.J.S.A.* 59:2–2(a) reads in pertinent part:

> The primary source of public entity liability is contained in subsection (a) of this section. It establishes the principle of vicarious liability for all public entities for "injury proximately caused by an act or omission of a public employee within the scope of his employment" and thereby relies upon the established principles of law such as the doctrine of *respondeat superior.* This provision specifically adopts the general concept of vicarious liability expressed by the New Jersey Supreme Court in *McAndrew v. Mularchuk,* 33 *N.J.* 172, 162 *A.*2d 820 (1960).
>
> [*Comment to N.J.S.A.* 59:2–2.]

In *McAndrew, supra,* 33 *N.J.* at 190, 162 *A.*2d 820, we recognized that "[t]here is perhaps no doctrine more firmly imbedded in the law than the principle that liability follows tortious wrongdoing and that employers or principals, individual or corporate, are responsible for that wrongdoing when committed by agents and employees acting within the scope of the employment." We explained that "[a]ll corporate entities, governmental and

otherwise, as artificial creatures accomplish their purposes through human agents." *Id.* at 192, 162 *A.*2d 820. In addition, we noted that "[t]he responsibility of the master or principal for the negligent acts of a servant or agent, committed while performing his delegated tasks, has always existed in this State as a matter of public policy." *Id.* at 191, 162 *A.*2d 820.

We also noted that "[o]ne basis for the doctrine is that it creates an incentive to be careful in the selection, instruction and supervision of such persons." *Id.* at 191–92, 162 *A.*2d 820. In addition, "from the standpoint of the injured third person, the master is better able to bear the burden of the losses resulting from such tortious acts by absorbing them as an incident of the operation of his enterprise." *Id.* at 192, 162 *A.*2d 820. Thus, we held "that where negligent [a]cts of commission form the basis of the claim against a municipal corporation, the issue of obligation to respond in damages shall be determined on general principles of [r]espondeat superior." *Id.* at 193, 162 *A.*2d 820.

With regard to the common-law principles of the doctrine of respondeat superior, "[i]t has long been recognized that control by the master over the servant is the essence of the master-servant relationship on which the doctrine of *respondeat superior* is based." *New Jersey Prop.–Liab. Ins. Guar. Ass'n v. State,* 195 *N.J.Super.* 4, 8, 477 *A.*2d 826 (App.Div.), *certif. denied,* 99 *N.J.* 188, 491 *A.*2d 691 (1984); *see also Restatement (Second) of Agency* § 220(1) (1958) ("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."). In *New Jersey Prop.— Liab. Ins. Guar. Ass'n, supra,* 195 *N.J.Super.* at 9 n. 2, 477 *A.*2d 826, the court noted that the terms "servant" as used in the *Restatement (Second) of Agency* § 220 and "employee" as used in *N.J.S.A.* 59:1–3 can be used interchangeably.

Under the control test, "the relation of master and servant exists whenever the employer retains the right to direct

the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done." *New Jersey Prop.–Liab. Ins. Guar. Ass'n, supra,* 195 *N.J.Super.* at 9, 477 *A.*2d 826 (citations and internal quotation marks omitted). The first factor to explore under the control test is "the degree of control exercised by the employer over the means by which the task is accomplished." *Delbridge v. Office of Pub. Defender,* 238 *N.J.Super.* 288, 320, 569 *A.*2d 854 (Law Div.1989) (citations omitted). Furthermore, "[a]mong the factors our courts have considered to infer an employer's right of control over an employee (aside from direct evidence of control) are method of payment[,] who furnishes the equipment, and right of termination." *New Jersey Prop.–Liab. Ins. Guar. Ass'n, supra,* 195 *N.J.Super.* at 14, 477 *A.*2d 826.

B

We next examine the constitutional and statutory scheme under which prosecutors and their subordinates operate. "The office of county prosecutor in the State of New Jersey is a constitutionally established office." *Coleman v. Kaye,* 87 *F.*3d 1491, 1500 (3d Cir.1996), *cert. denied,* 519 *U.S.* 1084, 117 *S.Ct.* 754, 136 *L.Ed.*2d 691 (1997). The New Jersey Constitution states that

[c]ounty prosecutors shall be nominated and appointed by the Governor with the advice and consent of the Senate. Their term of office shall be five years, and they shall serve until the appointment and qualification of their respective successors.

[*N.J. Const.* Art. VII, § 2, ¶ 1.]

"The specific powers and authority of the county prosecutor are fully set forth in Title 2A of the New Jersey Revised Statutes." *Coleman, supra,* 87 *F.*3d at 1500. "Each prosecutor [is] vested with the same powers and [is] subject to the same penalties, within his county, as the attorney general shall by law be vested with or subject to...." *N.J.S.A.* 2A:158–5.

"Similar to the county prosecutor, the New Jersey Attorney General is a constitutional officer pursuant to art. V., § 4, ¶ 3 of the New Jersey Constitution." *Coleman, supra,* 87 *F.*3d at 1500.

Thus, the principal concern of the Attorney General in supervising the county prosecutors seems to be "the maintenance of an effective statewide law enforcement policy." *Id.* at 1501. Moreover, *N.J.S.A.* 2A:158–4 states that "[t]he criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors." In addition, the Legislature has afforded the Attorney General the power to supersede a county prosecutor:

Whenever requested in writing by the Governor, the Attorney General shall, and whenever requested in writing by a grand jury or the board of chosen freeholders of a county or the assignment judge of the superior court for the county, the Attorney General may supersede the county prosecutor for the purpose of prosecuting all of the criminal business of the State in said county, intervene in any investigation, criminal action, or proceeding instituted by the county prosecutor, and appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions or proceedings as shall be necessary for the protection of the rights and interests of the State.

Whenever the Attorney General shall have superseded a county prosecutor as aforesaid, the county prosecutor, the assistant county prosecutors and other members of the staff of the county prosecutor shall exercise only such powers and perform such duties as are required of them by the Attorney General.

[*N.J.S.A.* 52:17B–106.]

Moreover, *N.J.S.A.* 52:17B–107a, states that "[w]henever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may (1) supersede a county prosecutor in any investigation, criminal action or proceeding, (2) participate in any investigation, criminal action or proceeding, or (3) initiate any investigation, criminal action or proceeding." Accordingly, "the Attorney General's supersedure power appears to have been bestowed with the understanding that it was intended to ensure the proper and efficient handling of the county prosecutors' 'criminal business.'" *Coleman, supra,* 87 *F.*3d at 1501 (citing *N.J.S.A.* 52:17B–106).

We examined the relation between county prosecutors and the executive branch of state government in *Cashen v. Spann,* 66 *N.J.* 541, 334 *A.*2d 8, *certif. denied,* 423 *U.S.* 829, 96 *S.Ct.* 48, 46 *L.Ed.*2d 46 (1975). *Cashen* involved a search of a private residence pursuant to a search warrant that was obtained on the basis of an affidavit that was "grossly erroneous in significant re-

spects[.]" *Id.* at 544, 334 *A.*2d 8. "The theory upon which plaintiffs assert[ed] liability on the part of the County of Morris [was] that the prosecutor and his aides were acting ... as agents of the county[,] which was therefore vicariously liable on principles of [r]espondeat superior." *Cashen v. Spann,* 125 *N.J.Super.* 386, 403, 311 *A.*2d 192 (App.Div.1973), *aff'd,* 66 *N.J.* 541, 334 *A.*2d 8 (1975). The Appellate Division in *Cashen* held that "the prosecutor and his aides were not agents of the county, but rather the State in their actions with respect to plaintiffs." *Ibid.* Thus, the Appellate Division concluded that "there [was] no liability as to the county for those actions under the doctrine of [r]espondeat superior." *Id.* at 404, 311 *A.*2d 192. We affirmed and noted that "[w]e also agree with the Appellate Division that in the context of this case, the prosecutor and the detectives are to be considered as agents of the State and not the county." *Cashen, supra,* 66 *N.J.* at 552, 334 *A.*2d 8. We also stated:

We wish to make it clear, however, that our resolution of this issue is limited to the factual circumstances here presented. We find it appropriate to regard the defendant officials as State agents where the alleged tortious conduct arose out of the investigation of criminal activity, but we express no opinion on the question of whether the prosecutor or his detectives can be considered State or county employees for other purposes. We also leave for another day the question of whether a county may be held vicariously liable for the conduct of a prosecutor or his detectives in other circumstances.

[*Ibid.* (citations omitted).]

Accordingly, we held that a county could not be held liable for the actions of the county prosecutor and his detectives when their tortious conduct arose out of the investigation of criminal activity. *Ibid.*

In *Dunne v. Fireman's Fund Am. Ins. Co.,* 69 *N.J.* 244, 247, 353 *A.*2d 508 (1976), we considered the limited issue of "whether the County of Morris, or its liability insurance carrier, Fireman's Fund American Insurance, or neither [was] obligated to furnish a defense for the detectives in the Cashen suit." *Id.* at 245, 353 *A.*2d 508. In relevant part we explained that

[c]ounty prosecutors' detectives possess a hybrid status. The position has been created by the County Detectives and County Investigators Act, *N.J.S.A.* 2A:157-1 *et seq.*—the title, perhaps indicative of some legislative intent, reflects their

> identification with the county. The Act authorizes the prosecutor to appoint persons "to be known as county detectives, to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law." *N.J.S.A.* 2A:157-2. The prosecutor, a State officer, selects and supervises them. The financial burdens related to the position are imposed on the county. The salary is paid by the county. *N.J.S.A.* 2A:157-18.... Further, all necessary expenses incurred by county detectives, such as costs of insurance, automobiles, and other necessities, must be paid by the county. *N.J.S.A.* 2A:157-19 and 2A:158-7.
>
> [*Id.* at 248-49, 353 *A.*2d 508.]

Further, we noted that "[r]ecognition of county control over county detectives and of [the] existence of an employer-employee relationship is not novel." *Id.* at 249, 353 *A.*2d 508. Thus, we concluded that

> [f]rom all the foregoing it may be seen that the county-county detective relationship is that of employer-employee for certain administrative and remunerative purposes. This finding is not inconsistent with our conclusion that in preparing and executing the affidavit upon which the search warrant was based and conducting the search Dunne, Bickley and Spann were 'agents of the State.' At the same time they were also employees of and there existed an employer-employee relationship with the County.
>
> [*Id.* at 250-51, 353 *A.*2d 508 (footnote omitted).]

We reasoned that because the "literal" language of the insurance policy afforded coverage for the detectives despite their "hybrid status," the Fireman's Fund was "under a duty to defend the suit." *Id.* at 251-52, 353 *A.*2d 508. In so holding, we noted that "[n]either the plaintiff detectives nor the Fireman's Fund ha[d] sued the State, and no adjudication was made on the third party action of the County of Morris against the State." *Id.* at 252, 353 *A.*2d 508. Thus, we explained that we were "not passing upon what responsibility, if any, the State may have to bear the cost of the defense or satisfy any judgment that may be entered against the detectives." *Ibid.*

With regard to federal case law, in *Coleman, supra,* 87 *F.*3d at 1499, the Third Circuit Court of Appeals considered whether the County of Monmouth could be held vicariously liable for acts performed by the county prosecutor in his administrative capacity and unrelated to his duty to investigate criminal activity. In *Coleman,* the plaintiff was an employee who brought a sex discrimination action against the Monmouth County Prosecutor, the

Monmouth County Prosecutor's Office and certain individuals based on the defendants' failure to promote her from investigator to sergeant or lieutenant. *Id.* at 1495. "The County of Monmouth [argued] that it [could not] be held accountable for Prosecutor Kaye's actions because he [was] a state official over whom the County exercise[d] no control." *Id.* at 1499.

The court began its analysis by noting that "[t]his is an issue of first impression, as the New Jersey Supreme Court has yet to address the specific issue of whether a county prosecutor acts as a state or county official when making personnel decisions at the county level." *Ibid.* The court also noted that in *Dunne* we had found that county prosecutors and their employees possess a "hybrid status":

A review of related authorities leads us to conclude that county prosecutors in New Jersey can be characterized as having a dual or hybrid status. *It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State.* On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office. We therefore predict that the New Jersey Supreme Court, if presented with a case in this posture, would hold that county prosecutors are acting on behalf of the county when they make personnel decisions.

[*Ibid.* (emphasis added).]

Moreover, the court's analysis included a review of the statutory and constitutional scheme relating to the position of county prosecutor. *Id.* at 1500–02. The court concluded that this scheme "provides county prosecutors in the State of New Jersey with a substantial degree of autonomy from the State government in matters that do not involve the enforcement of the criminal laws of the State." *Id.* at 1502. The court held that "[t]he decision whether to promote an investigator falls within the exclusive province of the county prosecutor," *ibid.*, and stated that

[w]hen county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State. But where, as here, the county prosecutor decides whether an employee in his or her office is worthy of an open promotion, the county prosecutor is performing an administrative function on the local level entirely unrelated to the duties involved in criminal prosecution.

[*Id.* at 1505–06 (emphasis added).]

Thus, the court concluded that Monmouth County could be held vicariously liable for the discriminatory acts of the prosecutor and his employees.

The holdings in *Cashen* and *Coleman* were reaffirmed in *Michaels v. State,* 968 *F.Supp.* 230, 236 (D.N.J.1997), *aff'd,* 150 *F.*3d 257 (3d Cir.1998), in which a nursery school teacher brought a 42 *U.S.C.* § 1983 action and a malicious prosecution action under New Jersey law against a former county prosecutor, three assistant county prosecutors, a county investigator, the State of New Jersey and Essex County. Relying on *Cashen* and *Coleman* the district court held that

so long as the prosecutorial defendants in this case were "investigat[ing] ... criminal activity" or "execut[ing] their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime," the County cannot be held vicariously liable under New Jersey law for claims arising therefrom. The State ... concedes that the prosecutorial defendants "were executing their sworn duties to enforce the laws when they participated in the investigation [and] prosecution that form the basis of plaintiff's claims." Plaintiff's claim against the County, therefore, falls squarely within the rule espoused in *Cashen,* leaving her without any cognizable claim, at least under New Jersey law, against the County.

[*Id.* at 233 (citations omitted).]

Thus, the district court reaffirmed the notion that the county cannot be held vicariously liable for the actions of prosecutorial defendants involving the investigation of criminal activity. The court did not, however, have the opportunity to decide whether the State could be held vicariously liable for such actions. *Id.* at 238 n. 10. The County had cross claimed against the State for defense and indemnification under *N.J.S.A.* 59:10–1 and *N.J.S.A.* 59:10A–1, but not to assert vicarious liability under *N.J.S.A.* 59:2–2(a). *Ibid.* Although the district court ruled against the County on the issue of defense and indemnification, it did imply that the State might be vicariously liable for the actions of the prosecutorial defendants in investigating criminal activity:

While the analyses in *Cashen* and *Coleman* arguably can be squared with the broader language of *N.J.S.A.* 59:2–2(a) for liability purposes, it simply would strain credulity to find that the Supreme Court of New Jersey intended the phrase "agent of the State" as used in *Cashen* to be synonymous with a "State employee" within

the meaning of *N.J.S.A.* 59:10-1 or 59:10A-1, particularly given that the Court, while it found that prosecutors and their aides can be considered "agents" for purposes of vicarious liability, declined to address whether prosecutors or their aides can be considered "employees" for purposes other than vicarious liability. [*Ibid.*]

The holding of the district court in *Michaels* was later affirmed by the Third Circuit "[f]or substantially the same reasons set out in the district court's opinion." *Michaels, supra,* 150 *F.*3d at 258.

## C

■ We address the issue of defense and indemnification separately from the question of vicarious liability because "the mere fact that an employer can be held liable under the doctrine of respondeat superior for the acts of an employee does not ... lead inexorably to the conclusion that the employer must, absent a contractual or statutory obligation, indemnify or defend the person when sued individually." *Michaels, supra,* 968 *F.Supp.* at 236 n. 7.

Initially, we note that although we acknowledge that *N.J.S.A.* 2A:158-7 states that "[a]ll necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws shall ... be paid by the county treasurer whenever the same shall be approved by the board of chosen freeholders of such county," we disagree with our dissenting colleague with respect to his assertion that that provision resolves the issue of the State's responsibility to bear the costs of defense and indemnification. The dissent argues that because defense and indemnification costs are part of "[a]ll necessary expenses" that must be paid by the county, *N.J.S.A.* 2A:158-7, the State cannot be held responsible to pay for the defense and indemnification of county prosecutors.

■ Moreover, we decline to decide the issue of defense and indemnification based on the county prosecutors' chapter of Title 2A, when the "TCA was [ ] intended to supersede the patchwork of statutory provisions providing for the defense and indemnification of state employees." *Chasin v. Montclair State Univ.,* 159

*N.J.* 418, 425, 732 *A.*2d 457 (1999). We are persuaded that the Legislature would not have enacted such detailed provisions dealing with the State's liability for defense and indemnification in the TCA if the provisions of *N.J.S.A.* 2A:158–7 resolved the issue. Thus, we rely exclusively on the provisions of the TCA, as well as related case law, to resolve the defense and indemnification issue because "the TCA, ... provides the unified scheme under which the Attorney General's duty to defend and indemnify employees must be evaluated." *Ibid.*

The TCA exception relevant to the issue of defense provides:

Except as provided in section 2 hereof [59:10A–2], the Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such *State employee* or former State employee on account of an act or omission in the scope of his employment.

[*N.J.S.A.* 59:10A–1 (emphasis added).]

The Attorney General may [only] refuse to provide for the defense on an action referred to in [*N.J.S.A.* 59:10A–1] if he determines that

a. the act or omission was not within the scope of employment; or

b. the act or the failure to act was because of actual fraud, willful misconduct or actual malice; or

c. the defense of the action or proceeding by the Attorney General would create a conflict of interest between the State and the employee or former employee.

[*N.J.S.A.* 59:10A–2.]

Thus, the Attorney General must defend a State employee for actions committed in the scope of employment as long as one of the above exceptions does not apply. In this case, the acts of the county prosecutors and their subordinates were committed within the scope of employment and the State does not allege that any of the three exceptions apply. Thus, the issue of defense turns on whether the SCPO employees can be considered "State employees" pursuant to *N.J.S.A.* 59:10A–1 of the TCA.

 "The State's duty to indemnify an employee parallels the duty to defend. *N.J.S.A.* 59:10–1 requires the State to indemnify employees for whom a defense is provided." *Chasin, supra,* 159 *N.J.* at 426, 732 *A.*2d 457. The purpose of furnishing a State employee with a legal defense "is to avoid the entry of a damages award in the first instance." *Michaels, supra,* 968 *F.Supp.* at 234

n. 4. "Thus, ... at least for purposes of the State's obligation under the [Tort Claims] Act, the concepts of indemnification and the provision of defense costs are 'wedded together.' " *Id.* at 236 n. 8. Accordingly, we consider the concepts of defense and indemnification as a single issue.

*N.J.S.A.* 59:10-1, the TCA provision relevant to the issue of indemnification, provides:

> If pursuant to the provisions of P.L.1972, c. 48 (C. 59:10A-1 et seq.) the Attorney General provides for the defense of an employee or former employee, the State shall provide indemnification for the *State employee.*
>
> [*N.J.S.A.* 59:10-1 (emphasis added).]

Moreover, *N.J.S.A.* 59:10-2 provides that

> [i]f the Attorney General refuses to provide for the defense of a State employee as required by the provisions of P.L.1972, c. 48 (C. 59:10A-1 et seq.), the employee or former employee of the State shall be entitled to indemnification from the State if he establishes that the act or omission upon which the claim or judgment was based occurred within the scope of his employment as an employee of the State and the State fails to establish that he acted or failed to act because of actual fraud, actual malice or willful misconduct.

██ "While the Act mandates indemnification of 'State employees,' it provides only permissive authority for local jurisdictions, such as counties." *Michaels, supra,* 968 *F.Supp.* at 236. *N.J.S.A.* 59:10-4 provides, in pertinent part, that "[l]ocal public entities are hereby empowered to indemnify local public employees consistent with the provisions of this act." A "local public employee" is an employee of a "local public entity," which is defined as "a public entity other than the State." *N.J.S.A.* 59:8-2. The *Michaels* court noted:

> Interestingly, the Comment to *N.J.S.A.* 59:10-4 explains that the indemnity provided should be for and to those persons "generally" and "traditionally" considered the State's employees, and that the legislature intended to distinguish traditional State employees from the employees of other public entities by requiring the State to indemnify the former and merely encouraging the local public entities to indemnify the latter.
>
> [*Michaels, supra,* 968 *F.Supp.* at 237.]

That Comment states:

> While this act provides mandated indemnification for State employees it provides only permissive authority for local jurisdictions to indemnify their employees. The

above provision specifically permits such indemnification if a local public entity considers it appropriate.

The definition of "State" contained in section 59:1–3 was provided for the purposes of this Chapter in order to indicate that the indemnity provided by the State should only be for and to those persons generally considered employees of the State. This definition was intended to distinguish State employees from employees of public authorities and from employees of other public entities who, as indicated by the above provision, may be indemnified within the discretion of their employer-public entity. It is not therefore the intention of the State to indemnify persons who are not traditionally considered the State's employees but it is the position of the Legislature that indemnification of all public employees should be encouraged.

*[Comment to N.J.S.A. 59:10–4.]*

In *Township of Edison v. Hyland,* 156 *N.J.Super.* 137, 141, 383 A.2d 714 (App.Div.1978), the Appellate Division considered whether a prosecutor's detective and two municipal police officers who were assigned to work on a narcotics task force for the county prosecutor could be considered "State employees" within the meaning of *N.J.S.A.* 59:10A–1. The Appellate Division held that

[a]lthough a prosecutor and prosecutor's detectives may be considered as agents of the State for some purposes, (*Cashen v. Spann,* 66 *N.J.* 541, 552, 334 *A.2d* 8 (1975)), they are not employees of the State for certain administrative and remunerative purposes, for the financial burdens of the prosecutor's office are imposed on the county. *See Dunne v. Fireman's Fund Am. Ins. Co.,* 69 *N.J.* 244, 248–251, 353 *A.2d* 508 (1976). It follows all the more that municipal employees hired and paid by the municipalities and assigned to the prosecutor for the performance of a special investigative function cannot be considered state employees within the ambit of *N.J.S.A.* 59:10A–1 *et seq.*

*[Ibid.]*

The Appellate Division next turned to "the question of the propriety of the trial court's order that the county [was] responsible for providing a defense for the municipal police officers." *Ibid.* The panel explained that

[the] order followed from the court's interpretation of the general statutory mandate which requires the county to pay "all necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws." *N.J.S.A.* 2A:158–7. *Cf. State v. Rush,* 46 *N.J.* 399, 217 *A.2d* 441 (1966). Other than this broad statute imposing fiscal responsibility on the county to pay for all the expenses of operation of the prosecutor's office necessary for detection, arrest, indictment and conviction of offenders, there is no statute paralleling *N.J.S.A.* 40A:14–155 which mandates that counties are responsible for the defense of employees engaged in prosecutorial work.

[*Id.* at 141–42, 383 *A.*2d 714.]

Thus, the Appellate Division held that there is "no legislative provision which calls upon the county to provide for the defense of the municipal police officers functioning as members of the prosecutor's task force." *Id.* at 142, 383 *A.*2d 714. "Having eliminated the State and the county from liability for the defense of the municipal police officers, [the Appellate Division held] that the only entities legally responsible for their defense costs [were] their respective employers, the Townships of Edison and Woodbridge." *Id.* at 143, 383 *A.*2d 714.

As discussed above, in *Michaels, supra,* the district court held that as long as the prosecutorial defendants in that case were investigating criminal activity or enforcing the law, the County could not be held vicariously liable for their actions. *Id.* at 233. After analyzing the relevant case law and the statutory framework related to that issue, the district court stated that "the critical issue ... is whether the prosecutorial defendants are 'State employees' within the meaning of the [Tort Claims] Act's indemnification and defense provisions, *N.J.S.A.* 59:10–1 and 59:10A–1." *Id.* at 237. The court stated in relevant part:

> As the Comment to *N.J.S.A.* 59:10–4 explains, the legislature intended, by limiting the State's liability for indemnification and defense costs to "State employees," to distinguish between public employees who *traditionally* have been considered State employees and those who have not. The narrow issue to be decided by this court, therefore, is whether public employees such as the prosecutorial defendants in this case traditionally have been considered State employees. Not even the County can contend—nor does it—that this has been the case. Indeed, it is undisputed that, for at least the last twenty years, the State has never indemnified or defended any county prosecutor or member of a prosecutor's staff in a money damages suit.
>
> . . . .
>
> Thus, given the care the Supreme Court of New Jersey took in limiting the application of *Cashen* coupled with the absence of any factual or legal support for the finding that public employees such as the prosecutorial defendants traditionally have been considered "State employees" within the meaning of *N.J.S.A.* 59:10–1 and *N.J.S.A.* 59:10A–1—this court predicts that the Supreme Court of New Jersey would find that the State is not responsible for indemnifying and defending the prosecutorial defendants in this case.

[*Id.* at 238 (footnotes omitted).]

Thus, the district court held that prosecutorial employees have not traditionally been considered "State employees" and therefore, are not entitled to defense and indemnification under the TCA. *Ibid.* However, we note that the *Michaels* court recognized the "anomaly" of their holding:

> While this result creates (or, rather, leaves in place) a practical *anomaly* whereby the State could be held vicariously liable for the actions of an individual— the same individual whom the county must indemnify and defend—it is an anomaly grounded in New Jersey statutory law and for which the Supreme Court of New Jersey has *twice failed to resolve or provide any guidance.*
>
> [*Id.* at 238 n. 12 (emphasis added).]

As noted earlier, the Third' Circuit affirmed the decision in *Michaels* "[f]or substantially the reasons set out in the district court's opinion" and predicted that "the Supreme Court of New Jersey would hold that under *N.J.S.A.* § 59:10A–1 the State is required to provide indemnification and a defense for only those persons generally and traditionally considered the State's employees." *Michaels, supra,* 150 *F.*3d at 258–59 (citation and internal quotation marks omitted).

In 1999, the Appellate Division again had the opportunity to address the issue of defense and indemnification in *DeLisa v. County of Bergen,* 326 *N.J.Super.* 32, 740 *A.*2d 648 (App.Div.1999), *rev'd on other grounds,* 165 *N.J.* 140, 755 *A.*2d 578 (2000). In *DeLisa,* the plaintiff was an employee who appealed from the dismissal of a retaliatory discharge claim that he had brought under the Conscientious Employee Protection Act (CEPA), alleging that he was discharged for cooperating in the criminal investigation of alleged misconduct of his co-employees in the investigative unit of the Bergen County Prosecutor's office. *Id.* at 35–36, 740 *A.*2d 648. "The County also appeal[ed] from the denial of its motion for summary judgment on its third-party complaint against the State for the costs of defense and indemnification. . . ." *Id.* at 35, 740 *A.*2d 648. The Appellate Division affirmed the dismissal of plaintiff's CEPA claim, stating:

> [The Acting Prosecutor] was serving two masters in these circumstances, both of which are public entities. He was a deputy attorney general assigned to be Acting Prosecutor of Bergen County, and he was the person performing the role of the

County Prosecutor under the Criminal Justice Act of 1970. A County Prosecutor is "a State officer," and under our case law, the State may be obligated to defend and pay for actionable civil wrongdoing by the County Prosecutor while acting as a law enforcement officer. But the County is responsible for defending and funding any damages awarded for his or her wrongdoing as an administrator, including his or her conduct with respect to personnel decisions. Thus, in these circumstances where a deputy attorney general was performing a dual function for the benefit of two governmental entities, the County cannot obtain reimbursement for the costs of defending a claim related to his administrative conduct.

[*Id.* at 40–41, 740 *A.*2d 648 (citations omitted).]

Accordingly, the Appellate Division affirmed the grant of summary judgment to the State on the issue of defense costs. *Id.* at 41, 740 *A.*2d 648. The Appellate Division reasoned that "the County is responsible for defending and funding any damages awarded for [the county prosecutor's] ... wrongdoing as an administrator, including his or her conduct with respect to personnel decisions." *Id.* at 40, 740 *A.*2d 648. Because *DeLisa* involved a retaliatory discharge claim, the court held that the county, not the State, was responsible for paying the prosecutor's defense costs. *Ibid.* Although we subsequently reversed the grant of summary judgment in favor of defendants and "remand[ed] the matter to the Law Division for further proceedings consistent with [our] opinion," *DeLisa v. County of Bergen*, 165 *N.J.* 140, 148, 755 *A.*2d 578 (2000), we did not address the issue of defense costs.

III

A

We must decide whether the State should be held vicariously liable for the actions of county prosecutors and their subordinates performed during the investigation, arrest, and prosecution of Isaac Wright. First, we note that we are not persuaded that the control test is dispositive or persuasive in determining that issue. In *Dunne*, *supra*, 69 *N.J.* at 248, 353 *A.*2d 508, we explained that county prosecutors' detectives possess a unique hybrid status with respect to their functions and responsibilities related to both the county and the State. Moreover, courts have recognized that

> [i]t is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.
>
> [*Coleman, supra,* 87 *F*.3d at 1499.]

In our view, because county prosecutors and their subordinates have such a unique inter-relationship with both the State and the county, the degree of control criterion is not adequate to fairly resolve the issue of vicarious liability. See *Delbridge, supra,* 238 *N.J.Super.* at 320, 569 *A*.2d 854 (holding that if control test alone is applied, public defenders would surely be "unable to meet the test because the essence of their representation in this instance is independence of judgment in carrying out their responsibilities to their clients"). Instead, we rely on statutory interpretation and relevant case law related to the vicarious liability provisions of the TCA to decide the issue. Under *N.J.S.A.* 59:2–2(a), "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment. . . ." Therefore, we must determine whether county prosecutors and their subordinates can be considered "employees" of the State under the vicarious liability provisions of the TCA.

*N.J.S.A.* 59:1–3 defines "employee" to include "an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor." Moreover, both our Court and the Third Circuit Court of Appeals have recognized that county prosecutors and their subordinates act as "agents" or "officers" of the State when investigating criminal activity and enforcing the law. *Cashen, supra,* 66 *N.J.* at 552, 334 *A*.2d 8 (stating that it is "appropriate to regard [prosecutors and detectives] . . . as State agents where the alleged tortious conduct arose out of the investigation of criminal activity"); *Dunne, supra,* 69 *N.J.* at 248, 353 *A*.2d 508 (referring to prosecutor as a "State officer"); *Coleman, supra,* 87 *F*.3d at 1499, 1505 (stating that

when county prosecutors engage in classic law enforcement and investigative functions, they act as "officers of the State" and "agents of the State").

The trial court in its August 1999 order and opinion concluded that the vicarious liability issue could not be resolved at that time because discovery was incomplete. However, we note that in both *Michaels* and *Cashen* actions against county prosecutors for malicious prosecution, false arrest and imprisonment, invasion of privacy, assault and battery, and 42 *U.S.C.* § 1983 violations were found to be related to the investigation and enforcement of the criminal laws. *Michaels, supra,* 968 *F.Supp.* at 232–33; *Cashen, supra,* 125 *N.J.Super.* at 391, 403–04, 311 *A.2d* 192. Because plaintiffs' third amended complaint consists almost entirely of similar allegations, we find that no further discovery is necessary and that all of plaintiffs' causes of action clearly relate exclusively to the county prosecutors' investigation and enforcement of the criminal laws of the State.

■ As discussed above, the comment to *N.J.S.A.* 59:2–2(a) explains that "[t]his provision specifically adopts the general concept of vicarious liability expressed by the New Jersey Supreme Court in *McAndrew v. Mularchuk,* 33 *N.J.* 172, 162 *A.2d* 820 (1960)." *Comment* to *N.J.S.A.* 59:2–2(a). In *McAndrew,* we held that "liability follows tortious wrongdoing and that employers or principals ... are responsible for that wrongdoing when [it is] committed by *agents* and employees acting within the scope of the employment." *McAndrew, supra,* 33 *N.J.* at 190, 162 *A.2d* 820 (emphasis added). Thus, the Legislature's adoption of the principle of vicarious liability as established in *McAndrew* expresses an intent not to exclude "agents" from the definition of "employee" for purposes of determining vicarious liability under the TCA.

In addition, we note that when prosecutors perform their law enforcement function, they are discharging a State responsibility that the Legislature has delegated to the county prosecutors, *N.J.S.A.* 2A:158–4 ("The criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors."),

subject to the Attorney General's right to supersede. See *N.J.S.A.* 52:17B–106. The legislative delegation, in combination with the Attorney General's supervisory authority and power to supersede, demonstrates that at its essence the county prosecutors' law enforcement function is clearly a State function. Moreover, unlike public education which, as our dissenting colleague observes, post at 461 – 62, 778 *A*.2d at 467 – 68, also is a State function, the county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General. Because law enforcement is a basic State function, and because county prosecutors are uniquely subject at all times to the Attorney General's statutory power to supervise and supersede them, we are persuaded that it is appropriate and consonant with legislative intent to construe the vicarious liability provisions of the TCA as imposing vicarious liability on the State for the tortious actions of county prosecutorial employees in the performance of their law enforcement duties.

We also note that *Cashen, Coleman,* and *Michaels* establish that a county cannot be held vicariously liable for the actions of prosecutorial defendants related to the investigation and enforcement of the criminal laws of the State. *Cashen, supra,* 66 *N.J.* at 552, 334 *A*.2d 8; *Coleman, supra,* 87 *F*.3d at 1505; *Michaels, supra,* 968 *F.Supp.* at 233. Thus, it follows that when county prosecutors and their subordinates act in their law enforcement/investigatory capacity, they act as "agents" and "officers" of the State, qualifying as State employees under *N.J.S.A.* 59:1–3 for the purpose of determining vicarious liability under the TCA. When their conduct in that context is actionable, the State should be made "to respond in damages" based "on general principles of [r]espondeat superior." *McAndrew, supra,* 33 *N.J.* at 193, 162 *A*.2d 820.

We conclude that the trial court erred by granting summary judgment in favor of the State on the issue of vicarious

liability. We hold that the State may be held vicariously liable for the tortious actions of SCPO's prosecutors and their subordinates performed during the investigation, arrest, and prosecution of Isaac Wright.

## B

With regard to the issue of defense and indemnification, in its August 1999 order and opinion the trial court, in granting summary judgment to the State, based its decision in part on *Michaels, supra,* 968 *F.Supp.* at 236, in which the federal district court held that the State of New Jersey was not responsible to indemnify county prosecutors and investigators.[1] However, we disagree with the district court's determination in *Michaels* that the focus in resolving the issue of defense and indemnification is on whether the prosecutors and their employees have " 'generally' and 'traditionally' [been] considered the State's employees." *Id.*

---

[1] The trial court also relied on *Henry v. Bissell,* No. 83–370 (D.N.J. July 31, 1989), an unpublished federal district court opinion, to hold that because the issue of defense and indemnification had been litigated as between the State and Somerset County in *Henry,* collateral estoppel applied. In *Henry,* the plaintiff filed a motion seeking attorney fees under 42 *U.S.C.A.* § 1988 from either the County of Somerset or the State of New Jersey.

In our view, despite the fact that the *Henry* court held that the county was responsible to reimburse the plaintiff for attorney fees under 42 *U.S.C.A.* § 1988, the issues in *Henry* are clearly distinguishable from those in this case. *Henry* did not involve a prosecutorial defendant who was seeking to be represented or indemnified by either the county or the State. Moreover, the *Henry* court never mentioned *N.J.S.A.* 59:10A–1 or *N.J.S.A.* 59:10–1 and never considered the definition of a "State employee" under the TCA. Accordingly, we conclude that the trial court erred by applying collateral estoppel to the issue of defense costs because *Henry* did not involve an "identical issue," *Hernandez v. Region Nine Hous. Corp.,* 146 *N.J.* 645, 659, 684 A.2d 1385 (1996), and did not extensively analyze the statutory framework and case law related to the specific issue of whether county prosecutors and their subordinates should be considered State employees pursuant to *N.J.S.A.* 59:10A–1. See also *Restatement (Second) of Judgments* § 27 at 250 (1982) (stating that when an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim).

at 237. That inquiry relies on a formalistic approach that fails to evaluate adequately the function of county prosecutors who have a "dual or hybrid status." As the Third Circuit has noted:

It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.

[*Coleman, supra*, 87 *F*.3d at 1499.]

In our view, because of their hybrid status, we need not regard as determinative whether the county prosecutors and their subordinates traditionally have been considered "State employees" within the meaning of the defense and indemnification provisions, *N.J.S.A.* 59:10–1 and *N.J.S.A.* 59:10A–1. Instead, we focus on whether the function that the county prosecutors and their subordinates were performing during the alleged wrongdoing is a function that traditionally has been understood to be a State function and subject to State supervision in its execution.

The position of county prosecutor was created for the purpose of prosecuting "[t]he criminal business of the State," *N.J.S.A.* 2A:158–4, and "the Attorney General [is the] chief law enforcement officer," who "maintain[s] a general supervision" and control over all of the county prosecutors. *N.J.S.A.* 52:17B–98; *N.J.S.A.* 52:17B–103. We also note that, although salaries and expenses of county prosecutors are paid by the county and the county provides their office and equipment, the Legislature has afforded the Attorney General the power to supersede a county prosecutor. *N.J.S.A.* 52:17B–107a (stating that "[w]henever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may (1) supersede a county prosecutor in any investigation, criminal action or proceeding").

Moreover, in *Coleman, supra*, the Third Circuit stated that "county prosecutors in the State of New Jersey [have] a substantial degree of autonomy from the State government in matters that do not involve the enforcement of the criminal laws of

the State." 87 *F.*3d at 1502. It follows that a prosecutor whose actions do involve the enforcement of the criminal laws does not enjoy a comparable degree of autonomy from the State government. Thus, the Attorney General has the ultimate responsibility in matters related to the enforcement of the State's criminal laws that have been legislatively delegated to county prosecutors. See *N.J.S.A.* 52:17B–98; *N.J.S.A.* 52:17B–103. We are persuaded that when county prosecutors and their subordinates are involved in the investigation and enforcement of the State's criminal laws, they perform a function that has traditionally been the responsibility of the State and for which the Attorney General is ultimately answerable. In our view, the State should be obligated to pay the county prosecutors and their subordinates' defense costs and to indemnify them if their alleged misconduct involved the State function of investigation and enforcement of the criminal laws. See *DeLisa, supra,* 326 *N.J.Super.* at 40, 740 *A.*2d 648 (stating that "[a] County Prosecutor is 'a State officer,' and under our case law, the State may be obligated to defend and pay for actionable civil wrongdoing by the County Prosecutor while acting as a law enforcement officer") (citation omitted).

The Comment to *N.J.S.A.* 59:10–4, which empowers public entities to indemnify local public employees for exemplary or punitive damages resulting from the employee's civil violation of State or federal law, states that

> [t]he definition of "State" contained in section 59:1–3 ... *was intended to distinguish State employees from employees of public authorities and from employees of other public entities who, as indicated by the above provision, may be indemnified within the discretion of their employer—public entity.* It is not therefore the intention of the State to indemnify persons who are not traditionally considered the State's employees but it is the position of the Legislature that indemnification of all public employees should be encouraged.
>
> [*Comment* to *N.J.S.A.* 59:10–4 (emphasis added).]

We acknowledge that the Legislature intended a sharp distinction between State employees and employees of other public entities that may be indemnified by such entities, but that distinction did not contemplate public employees, such as county prosecutors, who have a hybrid status. We are persuaded that the statutory

language used in *N.J.S.A.* 59:1–3 did not take into account the unique role of county prosecutorial employees, paid by the county, but performing a State law enforcement function under State supervisory authority. To vindicate the legislative purpose of providing defense and indemnification to public employees performing an essential State function, we interpret the defense and indemnification provisions of the TCA to apply to county prosecutorial employees sued on the basis of actions taken in the discharge of their law enforcement duties. That interpretation will resolve the anomaly acknowledged in *Michaels, supra,* 968 *F.Supp.* at 238 n. 12, "whereby the State could be held vicariously liable for the actions of an individual . . . whom the county must indemnify," by making the state fully liable for such defense and indemnification costs and providing the State full and complete control of the defense.

Accordingly, we conclude that the trial court erred by granting summary judgment in favor of the State with regard to the issue of defense and indemnification. We hold that the State of New Jersey may be required to indemnify and defend SCPO's prosecutors and their subordinates for tortious conduct committed during the investigation, arrest, and prosecution of Isaac Wright, under the relevant provisions of the TCA.[2] We note that the State's duty to indemnify and defend county prosecutors and their subordinates is limited to acts or omissions that do not involve actual fraud, actual malice or willful misconduct, see *N.J.S.A.* 59:10A and *N.J.S.A.* 59:10–2, and we leave to the trial court to determine on remand whether those statutory provisions are implicated in this matter.

---

[2] We note that although *N.J.S.A.* 59:10–3 states that "[a] State employee shall not be entitled to indemnification under this act unless within 10 calendar days of the time he is served with any summons, complaint, process, notice, demand or pleading, he delivers the original or a copy thereof to the Attorney General or his designee," because defendants' rights to indemnification were not clearly established prior to this opinion, defendants' claims for indemnification should not be procedurally barred based on that provision.

## IV

We reverse the judgment below and remand the matter to the Law Division for further proceedings consistent with this opinion.

SKILLMAN, P.J.A.D. (t/a), dissenting.

I am unable to reconcile the Court's conclusion that the State must defend and indemnify employees of a county prosecutor's office for claims brought under the Tort Claims Act with the legislative mandate that the counties must bear all expenses of operation of the prosecutors' offices. Therefore, I respectfully dissent.

*N.J.S.A.* 2A:158–7 provides:

> *All necessary expenses incurred by the prosecutor for each county* in the detection, arrest, indictment and conviction of offenders against the laws *shall*, upon being certified to by the prosecutor and approved, under his hand, by a judge of the superior court, *be paid by the county treasurer* whenever the same shall be approved by the board of chosen freeholders of such county. The amount or amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by order of the assignment judge of the superior court for such county.
>
> [Emphasis added.]

This statute expresses a "legislative policy that the county [shall] bear all costs and expenses ... incident to employment of county detectives[,]" as well as other employees of a county prosecutor's office. *Dunne v. Fireman's Fund Am. Ins. Co.,* 69 *N.J.* 244, 251–52, 353 *A.*2d 508 (1976).

In view of the legislative mandate that counties must bear all financial responsibility for operation of the county prosecutors' offices, the obligation to pay for the defense and indemnification of employees of a prosecutor's office should rest with the county unless the Tort Claims Act contains a clear and unequivocal expression of a contrary legislative intent. However, the Act does not reflect a legislative intent to treat the expenses of defending and indemnifying employees of a prosecutor's office differently from other expenses incurred in connection with the operation of a prosecutor's office. To the contrary, the pertinent provisions of

the Act and the commentary to the proposed Act reflect a legislative intent to extend the State's defense and indemnification obligations only to "traditional state employees."

N.J.S.A. 59:10A–1 provides that "[e]xcept as provided in [N.J.S.A. 59:10A–2], the Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment[,]" and N.J.S.A. 59:10–1 provides that "[i]f ... the Attorney General provides for the defense of an employee or former employee, the State shall provide indemnification for the State employee." [1] N.J.S.A. 59:1–3 defines "State" to "mean the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily authorized to sue and be sued." As indicated by the Attorney General's commentary to the proposed Act, which has "the precedential weight and value of legislative history[,]" Rochinsky v. State, Dept. of Transp., 110 N.J. 399, 407 n. 4, 541 A.2d 1029 (1988):

> The definition of "State" contained in [N.J.S.A.] 59:1–3 was provided for the purposes of [chapter 10 of the Act dealing with indemnification] to indicate that the indemnity provided by the State should only be for and to those persons generally considered employees of the State. This definition was intended to distinguish State employees from employees of public authorities and from employees of other public entities who, as indicated by the above provision, may be indemnified within the discretion of their employer—public entity. It is not therefore the intention of the State to indemnify persons who are not traditionally considered the State's employees. . . .
>
> [Report of the Attorney General's Task Force on Sovereign Immunity 240 (1972).]

The same restrictive definition of "State employee" applies to the Attorney General's duty under N.J.S.A. 59:10A–1 to provide a

---

[1] I note that the State construes these statutory provisions as extending to certain claims for money damages brought against State employees pursuant to the Federal Civil Rights Act, 42 U.S.C.A. § 1983. See In re Petition for Review of Opinion 552 of Advisory Comm. on Prof'l Ethics, 102 N.J. 194, 200, 507 A.2d 233 (1986).

defense for a state employee or former state employee sued for an act or omission within the scope of employment. *See Michaels v. State of New Jersey*, 968 *F.Supp.* 230, 234 n. 4 (D.N.J.1997) (noting that the responsibilities for defense and indemnification are "wedded together"), *aff'd*, 150 *F.*3d 257 (3d Cir.1998).

The employees of a county prosecutor's office are not "traditionally" considered to be State employees. The State does not pay their salaries and expenses or provide them with State offices and the use of state automobiles, as it does true State law enforcement officers. Instead, all of these monetary obligations are assumed by the counties, in conformity with the mandate of *N.J.S.A.* 2A:158–7. The titles of employees of a county prosecutor's office—*county* prosecutor, assistant *county* prosecutor, *county* detective and *county* investigator—also reflect the fact that they are not "generally considered employees of the State." All of these indicia of county employment are incompatible with the Court's conclusion that employees of a county prosecutor's office are State employees within the contemplation of *N.J.S.A.* 59:10A–1 and *N.J.S.A.* 59:10–1.[2] *Cf. Dunne, supra*, 69 *N.J.* at 248–52, 353 *A.*2d 508.

In concluding that the State has financial responsibility for torts committed by employees of a county prosecutor's office, the Court focuses upon the section of the Tort Claims Act that imposes vicarious liability upon public entities for the torts of their employees, rather than upon the sections that deal specifically with the defense and indemnification of State employees. *Ante* at 434 – 43,

---

[2] Because there is no indication that the Legislature intended employees of a county prosecutor's office to be treated as "State employees" who are entitled to have the State provide a defense and indemnification for tort claims, there is no basis for the Court's conclusion that the Tort Claims Act was "intended to supersede" the mandate of *N.J.S.A.* 2A:158–7 that counties shall be responsible for all necessary expenses incurred in connection with the operation of a prosecutor's office as it relates to the expense of defense and indemnification. *Ante* at 443, 778 *A.*2d at 456 (quoting *Chasin v. Montclair State Univ.*, 159 *N.J.* 418, 425, 732 *A.*2d 457 (1999)).

449 – 53, 778 *A.2d* at 450 – 56, 459 – 62. The section of the Act dealing with vicarious liability, *N.J.S.A.* 59:2–2a, provides that:

A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

However, as the Attorney General's commentary indicates, this section simply "adopts the general concept of vicarious liability" by making "[a] public entity ... [liable for] ... [the torts] of [its] public employee [committed] within the scope of ... employment." *Report of the Attorney General's Task Force on Sovereign Immunity, supra,* at 211. *N.J.S.A.* 59:2–2a does not address whether a particular "public employee" should be considered a "State" or "county" employee. *N.J.S.A.* 59:1–3, *N.J.S.A.* 59:10A–1 and *N.J.S.A.* 59:10–1 are the only provisions that indicate which public employees the Legislature considers to be "State employees," for whom the State bears financial responsibility under the Tort Claims Act. Therefore, the conclusion that under those provisions, employees of a county prosecutor's office are not "State employees," who the State must defend and indemnify for any claim under the Tort Claims Act, is equally applicable to a claim under *N.J.S.A.* 59:2–2a seeking to impose vicarious liability upon the State.

The Court reasons that because law enforcement is a "basic State function," the Tort Claims Act should be construed to impose financial responsibility upon the State for the tortious actions of employees of a county prosecutor's office in the performance of their law enforcement duties. *Ante* at 452, 778 *A.2d* at 462. However, the fact that law enforcement is a State function is not responsive to the question of whether the Legislature intended the State or county to bear financial responsibility for employees of a prosecutor's office who are sued for alleged tortious conduct. As Judge Conford observed in *Bonnet v. State,* 155 *N.J.Super.* 520, 527, 382 *A.2d* 1175 (App.Div.), *aff'd summarily,* 78 *N.J.* 325, 395 *A.2d* 194 (1978):

In an ultimate sense, all governmental services and functions below the federal level are "state" services and functions, whether the Legislature delegates their

administration and the funding of their costs, in whole or in part, to local political subdivisions, county or municipal. This is so because the State Legislature controls and regulates them absolutely, subject only to constitutional conditions.

*See also Robinson v. Cahill,* 62 *N.J.* 473, 502, 303 *A.*2d 273 (1973) ("[L]ocal government is simply an arm of the State with respect to the many State functions which the State decides shall be performed through local government."). Thus, public education is viewed as a State function because the Constitution imposes an obligation upon the State Legislature to "provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the age of five and eighteen years." *N.J. Const.* art. 8, § 4, ¶ 1. *See In re Grant of Charter Sch. Application of Englewood on Palisades Charter Sch.,* 164 *N.J.* 316, 319, 753 *A.*2d 687 (2000). Nevertheless, the Legislature has imposed substantial administrative and fiscal responsibilities for the performance of this State function upon local public entities. See *Abbott v. Burke,* 149 *N.J.* 145, 164–65, 693 *A.*2d 417 (1997); *Robinson v. Cahill, supra,* 62 *N.J.* at 496–98, 303 *A.*2d 273.

Similarly, the employees of a municipal police department who investigate violations of the Criminal Code perform the same State function as investigators in a county prosecutor's office, but they remain municipal employees, for whom municipal governments bear responsibility for the payment of salaries and other necessary expenses, including any expenses incurred in defending or indemnifying police officers for claims under the Tort Claims Act. *See Township of Edison v. Hyland,* 156 *N.J.Super.* 137, 141–44, 383 *A.*2d 714 (App.Div.1978). By providing that the counties shall pay "[a]ll necessary expenses incurred by the prosecutor," *N.J.S.A.* 2A:158–7, the Legislature has determined that even though employees of a county prosecutor's office may be characterized as State officers or agents for some purposes, county governments should bear the same financial responsibility for the operation of the county prosecutors' offices that municipal governments bear for the operation of municipal police departments.

In support of its interpretation of the Act, the Court relies upon the statement in *Cashen v. Spann*, 66 *N.J.* 541, 552, 334 *A.*2d 8, *cert. denied*, 423 *U.S.* 829, 96 *S.Ct.* 48, 46 *L.Ed.*2d 46 (1975), that "the prosecutor and the detectives are to be considered agents of the State and not the county." However, *Cashen* did not involve any claim against the State. In fact, the State was not even a party to the case until it intervened before the Supreme Court. *Id.* at 545 n. 1, 334 *A.*2d 8. Moreover, *Cashen* involved tort claims that had accrued prior to enactment of the Tort Claims Act. *Id.* at 551 n. 4, 334 *A.*2d 8. Consequently, the issue in *Cashen* was solely whether the county could be held vicariously liable for alleged torts of a county prosecutor and his detectives under common law principles.

In any event, whatever precedential significance *Cashen* might have had with respect to this appeal was diluted by the Court's subsequent decision in *Dunne, supra*, 69 *N.J.* 244, 353 *A.*2d 508, which arose out of the same alleged illegal search by county prosecutor's office detectives as *Cashen*. In *Dunne*, the county asserted claims for the defense and indemnification of the detectives against an insurance carrier, Fireman's Fund, which had issued a policy providing coverage for certain torts committed by "county employees." In concluding that the detectives were county employees, who were entitled to receive a defense from the county's insurance carrier, the Court stated:

> County prosecutors' detectives possess a hybrid status. The position has been created by the County Detectives and County Investigators Act—the title, perhaps indicative of some legislative intent, reflects their identification with the county.... The financial burdens related to the position are imposed on the county. The salary is paid by the county.... Further, all necessary expenses incurred by county detectives, such as costs of insurance, automobiles, and other necessities, must be paid by the county.
>
> ....
>
> From all the foregoing it may be seen that the county-county detective relationship is that of employer-employee for certain administrative and remunerative purposes. This finding is not inconsistent with our conclusion [in *Cashen*] that in preparing and executing the affidavit upon which the search warrant was based and conducting the search, [the detectives] were "agents of the State." At the same time they were also employees of and there existed an employer-employee relationship with the County....

... A detective then is a county employee who carries out his functions as such for the prosecutor. The status of the plaintiffs literally satisfies the definition in the Fireman's Fund policy. This result conforms with the legislative policy that the county bear all costs and expenses, including liability insurance premiums, incident to employment of county detectives.

[*Id.* at 248–52, 353 *A.2d* 508 (statutory citations omitted).]

Subsequent to *Dunne,* the Appellate Division squarely held that the State has no obligation to assume responsibility for the defense of a county prosecutor's office detective who is joined as a defendant in an action arising out of a criminal investigation. *Township of Edison, supra,* 156 *N.J.Super.* at 144, 383 *A.2d* 714. In the course of its opinion the court noted:

Although a prosecutor and prosecutor's detectives may be considered as agents of the State for some purposes (*Cashen* [*supra,* 66 *N.J.* at 552, 334 *A.2d* 8] ), they are not employees of the State for certain administrative and remunerative purposes, for the financial burdens of the prosecutor's office are imposed on the county. *See Dunne* [*supra,* 69 *N.J.* at 248–251, 353 *A.2d* 508].

[*Id.* at 141, 383 *A.2d* 714.]

The Court also relies upon a federal district court decision that concluded, attempting to reconcile *Cashen* with *Dunne,* that the State is not responsible under *N.J.S.A.* 59:10A–1 and *N.J.S.A.* 59:10–1 for defending or indemnifying employees of county prosecutor's office for torts committed in the course of their employment, but that the State might be held vicariously liable for their conduct. *Michaels, supra,* 968 *F.Supp.* at 232–38. The court noted that this result would create "a practical anomaly whereby the State could be held vicariously liable for the actions of . . . the same individual whom the county must indemnify and defend[.]" [3] *Id.* at 238 n. 12. However, the court was not called upon to

_____

[3] The anomaly referred to by the district court derives from the fact that because vicarious tort liability is secondary, the State would be entitled to indemnification from any employee whose tortious conduct resulted in the imposition of liability upon the State pursuant to *N.J.S.A.* 59:2–2a. *See Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 *N.J.* 55, 80, 159 *A.2d* 97 (1960). Thus, under the analysis in *Michaels,* the State could seek indemnification from an employee of a county prosecutor's office for any vicarious liability incurred by the State as a result of that employee's conduct and, assuming a county indemnifies its employees for their torts, the employee could then seek indemnification from the county for this liability.

reconcile this anomaly because the case did not involve any issue concerning the State's vicarious liability. *See id.* at 237 n. 10. On appeal, the Third Circuit affirmed "[f]or substantially the reasons set out in the district court's opinion," based on its "predict[ion] that the Supreme Court of New Jersey would hold that under *N.J.S.A.* 59:10A–1 the State is required to provide indemnification and defense for only 'those persons "generally" and "traditionally" considered the State's employees.' " *Michaels, supra,* 150 *F.*3d at 258–59.

The other Third Circuit decision relied upon by the Court, *Coleman v. Kaye,* 87 *F.*3d 1491 (3d Cir.1996), *cert. denied,* 519 *U.S.* 1084, 117 *S.Ct.* 754, 136 *L.Ed.*2d 691 (1997), involved the question whether the State or county could be liable for an act of employment discrimination committed by a prosecutor. The court concluded, without citing the Tort Claims Act, that only the county could be held liable for a county prosecutor's personnel decisions. *Id.* at 1499.

In short, neither *Cashen* nor the federal decisions relied upon by the Court provide a definitive interpretation of the vicarious liability of public entities under *N.J.S.A.* 59:2–2a. *Cashen* was based on pre-Tort Claims Act common law, and *Coleman* did not involve an interpretation of the Act. Although *Michaels* involved an issue of a county's vicarious liability under *N.J.S.A.* 59:2–2a, the court's decision rested solely on its prediction of how the Court ultimately would decide this state law issue. See *Becker v. Baron Bros.,* 138 *N.J.* 145, 165, 649 *A.*2d 613 (1994) (noting that the Court is "not bound by [federal court] decisions in respect of our own State law."). Consequently, I disagree with the Court's view that *"Cashen, Coleman* and *Michaels* establish that a county cannot be held vicariously liable for the actions of prosecutorial defendants related to the investigation and enforcement of the criminal laws of the State[.]" *Ante* at 452, 778 *A.*2d at 462. In my view, the resolution of this issue is not constrained by prior case law.

One of the essential rationales for imposing vicarious liability upon an employer for the torts of its employees is that the employer "is better able [than the injured party] to bear the burden of the losses resulting from such tortious acts by absorbing them as an incident of the operation of [its] enterprise." *McAndrew v. Mularchuk*, 33 *N.J.* 172, 192, 162 *A.*2d 820 (1960). The mandate of *N.J.S.A.* 2A:158–7 that the county shall pay "[a]ll necessary expenses" incurred in the operation of the prosecutor's office constitutes a legislative policy determination that the cost of operation of this public enterprise shall be borne by the county. Thus, a county's liability under the doctrine of respondeat superior for any loss that may be incurred as a result of a tortious act by an employee of a prosecutor's office, like the cost of premiums to insure against such loss, see *Dunne, supra,* is simply "an incident of the operation of [this] enterprise." *McAndrew, supra,* 33 *N.J.* at 192, 162 *A.*2d 820. Therefore, consistent with the narrow interpretation of "State employee" reflected in *N.J.S.A.* 59:1–3, *N.J.S.A.* 59:10A–1, *N.J.S.A.* 59:10–1 and the Attorney General's commentary to the proposed Act, I would conclude that employees of a county prosecutor's office are county rather than State employees for the purpose of imposition of vicarious liability under *N.J.S.A.* 59:2–2a.

The Court's conclusion that this appeal is not controlled by *N.J.S.A.* 2A:158–7 and that the Legislature intended to impose an obligation for defense and indemnification and vicarious liability upon the State for tortious conduct of employees of a prosecutor's office is inconsistent with long-standing administrative practice. In the nearly thirty years since enactment of the Tort Claims Act, *L.* 1972, *c.* 45, counties have routinely provided representation to employees of a county prosecutor's office who are sued under the Tort Claims Act or Federal Civil Rights Act. See *Michaels, supra,* 968 *F.Supp.* at 235. Although counties have occasionally attempted to shift this responsibility to the State, the Appellate Division has repeatedly rejected arguments similar to the ones advanced by appellants and upheld the State's position that employees of a prosecutor's office are county rather than State

employees and that the county bears the responsibility of defending them. *See, e.g., Township of Edison, supra; Steele v. State,* A–225–81T3 (decided Feb. 10, 1982); *Ruvoldt v. County of Hudson,* A–5281–80T3 (decided Feb. 10, 1982), *certif. denied,* 91 *N.J.* 226, 450 *A.*2d 552 (1982).[4] More commonly, the counties have simply provided representation to employees of county prosecutors' offices either directly through county counsel or the prosecutor's office or indirectly through private counsel, without raising any issue concerning their obligation to provide such representation. *See, e.g., Giuffre v. Bissell,* 31 *F.*3d 1241, 1243 (3d Cir.1994); *Davis v. Stamler,* 650 *F.*2d 477, 478 (3d Cir.1981); *Carter v. Chief of Police,* 437 *F.*2d 413, 414 (3d Cir.1971); *Muhammed v. Coburn,* 535 *F.Supp.* 736, 737 (D.N.J.1980); *Sczyrek v. County of Essex,* 324 *N.J.Super.* 235, 236, 735 *A.*2d 33 (App.Div.), *certif. denied,* 163 *N.J.* 75, 747 *A.*2d 284 (2000); *Van Engelen v. O'Leary,* 323 *N.J.Super.* 141, 143, 732 *A.*2d 540 (App.Div.), *certif. denied,* 162 *N.J.* 486, 744 *A.*2d 1208 (1999); *Seneca v. Bissell,* 274 *N.J.Super.* 613, 615, 644 *A.*2d 1147 (App.Div.), *certif. denied,* 138 *N.J.* 272, 649 *A.*2d 1291 (1994); *Hayes·v. County of Mercer,* 217 *N.J.Super.* 614, 617, 526 *A.*2d 737 (App.Div.), *certif. denied,* 108 *N.J.* 643, 532 *A.*2d 226 (1987). This long-standing administrative practice is entitled to substantial weight in construing the Tort Claims Act. *See New Jersey Ass'n on Correction v. Lan,* 80 *N.J.* 199, 214–15, 403 *A.*2d 437 (1979).

Although the record does not indicate the number of state tort and federal civil rights claims brought against employees of county prosecutors' offices, it may be anticipated that the Court's decision will require the Attorney General's office to assume responsibility for a substantial number of additional cases and impose a significant new expense upon the State. The county prosecutors' offices employ a large number of assistant prosecutors, investigators, and

---

[4] I cite the unreported opinions in *Steele* and *Ruvoldt* not as precedent, see *R.* 1:36–3, but rather as part of the historical foundation for the prevailing understanding that the county bears responsibility for providing representation to employees of a county prosecutor's office.

other personnel who perform a variety of investigative and prosecutorial duties that may give rise to claims for money damages. Any such claim, including a personal injury action arising out of the alleged negligent operation of an automobile in connection with a criminal investigation or prosecution, will now presumably have to be defended by the Attorney General, and the State would then have to pay any judgment that may be entered. *N.J.S.A.* 59:10–1. Therefore, in the absence of a compelling showing that the long-standing administrative practice of counties providing defense and indemnification to employees of county prosecutors' offices is contrary to existing law, I believe that any decision to shift these responsibilities to the State should be made by the Legislature.

The Court has previously recognized that the characterization of a public employee as a State agent or officer should not be determinative of an issue concerning the allocation of financial responsibility for the employee's alleged wrongdoing. In *Godfrey v. McGann,* 37 *N.J.* 28, 179 *A.*2d 6 (1962), the question was whether the State or Essex County was responsible for the payment of claims arising out of the embezzlement of money by the cashier of the Essex County Probation Department. The trial court held that the Probation Department is "an arm of the state judiciary" and consequently its officials are State "servants, agents and employees." *Godfrey v. Board of Chosen Freeholders of County of Essex,* 65 *N.J.Super.* 213, 214–15, 167 *A.*2d 221 (Law Div.1961). On that basis, the trial court concluded that the State should bear responsibility for reimbursement of the money embezzled by the cashier.

However, the Court held that the allocation of this financial responsibility should not turn on whether employees of a county probation department are characterized as "State" or "county" agents, but rather on whether the Legislature intended the State or county to be responsible for expenses incurred as a result of the cashier's wrongdoing.

The county is an agency of the State to administer state power and authority. One of the county's principal roles is to help provide for the operation of the state judicial system within its borders. Accordingly, the taxpayers of the county bear a proper share of the cost of administering the judicial system within the county. The allocation of expenses to be paid by the taxpayers of the whole State and those to be paid by taxpayers of a county is a matter for legislative decision.

. . . .

... [T]he Legislature made each county responsible for meeting the expenses incurred in the operation of its Probation Department. *N.J.S.A.* 2A:168–8. Therefore, at least as far as monetary support is concerned, the Probation Department is a county subdivision.

. . . .

... [P]robation officers and employees of the Probation Department cannot be specifically identified as county or state agents. Therefore, the label attached to individuals is of no help in solving the present issue. Hence, this case cannot turn upon whether officers and employees of the Probation Department are "state" or "county" agents. The issue framed is whether the Legislature intended the State or the county to be chargeable with the losses caused by embezzlements of such agents.

[37 *N.J.* at 34–36, 179 *A.*2d 6.]

The Court concluded, based on statutory provisions authorizing the County Board of Freeholders to investigate the accounts of Probation Department employees and imposing responsibility upon the county to pay the premium on an "honest accounting" bond "as a necessary expense" of the Probation Department, that there was a "legislative design" to impose financial responsibility for the misappropriation of funds by a member of the Probation Department upon the county. *Id.* at 37, 179 *A.*2d 6.

As in *Godfrey,* the question in this case is not whether employees of a county prosecutor's office are agents or officers of the State, but rather whether the Legislature intended to treat the expenses of defending and indemnifying these officials differently than the other expenses of operation of a prosecutor's office. The Tort Claims Act does not contain any expression of such a legislative intent. To the contrary, the provisions of the Act governing the State's defense and indemnification obligations and the Attorney General's commentary on the proposed Act clearly reflect a legislative intent to limit these obligations to traditional state employees. Furthermore, in the nearly thirty years since enactment of the Tort Claims Act, the State and counties have

followed this view of the legislative intent, and the State has never been required to provide defense and indemnification or been held vicariously liable for the tortious conduct of an employee of a prosecutor's office. The Court has not demonstrated any basis for departing from this long-standing administrative practice.

Accordingly, I would affirm the orders of the trial court dismissing appellants' defense and indemnification claims against the State.

*For reversal and remandment*—Justices STEIN, COLEMAN, LONG and Judge PRESSLER (t/a)—4.

*For affirmance*—Judge SKILLMAN (t/a)—1.