**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2256-23

SNEZANA SUMULIKOSKI
and SIME SUMULIKOSKI,
her husband,

      Plaintiffs-Appellants,

v.

RESTAURANT DEPOT, LLC,[1]
and VIDA CAFÉ, INC., d/b/a
MAMAJUANA CAFÉ,[2]

      Defendants-Respondents,

and

MIGUEL PEREZ-HERNANDEZ,

      Defendant.

_____

Argued March 18, 2025 – Decided August 7, 2025

Before Judges Sumners and Bergman.

---

[1] Improperly pled as Restaurant Depot.

[2] Improperly pled as Mamajuana Cafe.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2002-21.

E. Drew Britcher argued the cause for appellants (Britcher, Leone and Sergio, LLC, attorneys; E. Drew Britcher, on the briefs).

Ryan S. McInerney argued the cause for respondent Restaurant Depot, LLC (Kennedys CMK LLP, attorneys; Pasquale A. Pontoriero and Ryan S. McInerney, on the brief).

Amy E. Robinson argued the cause for respondent Vida Café Inc. (O'Toole Scrivo, LLC, attorneys; Amy E. Robinson, on the brief).

PER CURIAM

Plaintiffs Snezana Sumulikoski and Sime Sumulikoski[3] appeal from orders granting summary judgment to defendants Restaurant Depot and Vida Café, Inc. and dismissing their complaint against both defendants. After our de novo review and application of the pertinent legal principles, we affirm.

I.

After filing their original complaint alleging negligence against Restaurant Depot in March 2021, plaintiffs filed an amended complaint naming Miguel Perez-Hernandez and Vida Café as additional defendants in May.

---

[3] We refer to Snezana Sumulikoski as plaintiff in this opinion as plaintiff Simi Sumulikoski's claims are per quod only and were not substantively addressed by appellant in the trial court nor in this appeal.

A-2256-23

Plaintiff claims she sustained injuries due to the negligence of defendants from an incident which occurred on April 26, 2019 at Restaurant Depot's South Hackensack location. Plaintiff was shopping at Restaurant Depot when she stopped to ask for assistance from a Restaurant Depot employee at the end of a store aisle. At the same time, defendant Perez-Hernandez was pushing a U-boat[4] loaded with boxes. In plaintiff's statement prepared after the incident, she stated she was struck by Perez-Hernandez's U-boat on the right side of her back. Perez-Hernandez was alleged to have been pushing a U-boat supplied by Restaurant Depot which was stacked about six feet high with boxes. Plaintiff testified at her deposition, Perez-Hernandez's U-boat was loaded to the point where he could not see over it.

On the date of the incident, Perez-Hernandez also submitted a written statement. Perez-Hernandez reports he was pushing his U-boat when plaintiff stopped suddenly to ask a question to a Restaurant Depot employee. He stated he did not see her stop and he struck her from behind boxes stacked on his U-boat.

---

[4] A U-boat is a large two-tiered shopping cart capable of holding a large quantity of groceries and other products.

According to the deposition testimony of Vida Café manager Victor Santos, Perez-Hernandez was hired by Vida Café to shop for products for its business. Santos testified since 2018, Vida Café utilized Perez-Hernandez to shop for its supplies and paid him one-hundred-fifty dollars for each shopping trip. Santos testified he provided Perez-Hernandez with a list of products via text message or a phone call for "essentials" like "rice, seasonings, beans, oil, butter." Santos stated Vida Café provided Perez-Hernandez with its Restaurant Depot membership card imprinted with the business name "Mamajuana Café." Santos testified Vida Café does not provide Perez-Hernandez with instructions on how to shop at Restaurant Depot. Santos stated that Perez-Hernandez shopped for Vida Café only on Mondays and Thursdays and the date of the incident was on a Friday. Santos testified he does not know Perez-Hernandez's shopping schedule at Restaurant Depot for other businesses. He stated at the end of the year, Vida Café provided Perez-Hernandez an Internal Revenue Service 1099 tax form.

At his deposition, Perez-Hernandez testified he was hired to shop at Restaurant Depot by entities other than Vida Café. He testified he would shop for multiple entities in one trip to Restaurant Depot.

A-2256-23

After the incident Perez-Hernandez presented a Restaurant Depot membership card provided to him by Vida Café under the name "Mamajuana Café." However, Perez-Hernandez testified he did not recall which entity he was shopping for on the day of the incident. Related to this issue, Santos testified that Perez-Hernandez always supplies Vida Café with a receipt for purchases he incurred on the restaurant's behalf. Santos testified that Vida Café has no credit card records or receipts to establish Perez-Hernandez was shopping for Vida Café on the date of the incident.

Perez-Hernandez also stated if he purchased products for Vida Café, he would use the credit card it provided to him. At the time of the incident, he was only in possession of the Vida Café membership card, not the credit card. Perez-Hernandez further testified even if he used the Vida Café membership card to gain entrance to Restaurant Depot, it did "not necessarily" mean he purchased any items for Vida Café.

At her deposition, plaintiff testified after the incident she requested an employee to view the cameras to ascertain what had occurred and she was taken to the manager's office where an employee was able to find a video recording. She stated the recording showed Perez-Hernandez "coming around with the cart" while making a turn from a different aisle to the aisle where plaintiff was struck.

A-2256-23

She testified she saw video footage of Perez-Hernandez pushing his U-boat in the same aisle where she was standing and the employee "even made a comment [as to] how full the customer's cart [was]." She stated the video showed Perez-Hernandez make his way from the end of the aisle until he struck her. Plaintiff further testified the video did not show the moment she was struck by the U-boat because it "was [piled] so high."

Michael Hidasi, an assistant store manager at Restaurant Depot, estimated the Hackensack store had approximately twenty to thirty different surveillance camera locations throughout the store. Hidasi testified that the surveillance videos could be watched in the manager's office and in order to isolate or focus upon one particular camera view, a mouse could be double clicked to enlarge the video image. Hidasi further testified there was a way to preserve the video and policies were in place for the preservation of surveillance footage. He stated, "if there had been an incident such as theft or a customer accident or an employee accident, we would register the time code and the camera number and send it up to . . . corporate basically so that they can pull the video and save it."

Although Hidasi was the individual who reviewed the surveillance videos on the day of the incident in order to ascertain what was shown, he said he did not preserve any video from the date of the incident because he was unable to

6

find a clear video of the moment plaintiff was struck by the U-boat. As such, the footage which plaintiff testified she observed showing Perez-Hernandez maneuvering his U-boat around the store, or of him pushing the U-boat toward plaintiff was not preserved. Hidasi testified he would not have searched for video which would have shown the manner in which Perez-Hernandez had been operating the U-boat before the point of impact. He explained he "would have looked for the camera angle that [he] would have assumed had the best view" of the incident and he would have "scrolled through [the footage]" looking for the point of impact. When asked if he could recall a situation in which he would assist a customer to separate an overloaded U-boat onto two separate U-boats, he stated "that would be something that could happen" and because he was trained in safety, he was "trained to look out for things of that nature that could be unsafe[.]" However, he conceded that although he was provided some instruction as to how to push and maneuver the U-boats, no guidance was ever provided regarding the danger an overloaded U-boat could pose.

Steven Kolomer, a regional manager for Restaurant Depot was also deposed. In response to a question concerning the stacking of items on a U-Boat, he stated a customer utilizing and pushing a U-boat should not stack a pile of merchandise on it high enough to obstruct their view. When asked if he would

7

do anything where he observed a customer pushing a U-boat with boxes piled higher than they could see over, he acknowledged he would stop the customer and offer to bring the customer another U-boat, help them reduce their load, or instruct the customer to pull, rather than push, the U-boat in order for the customer to be able to see in front of them. Kolomer testified he had made those suggestions in the past. Kolomer further stated if a customer is not looking around the side of the U-boat piled to the point where the customer cannot see over it, this situation poses a danger to both fellow customers and Restaurant Depot employees. Kolomer testified Restaurant Depot does not provide any training to its employees to assist customers in reducing the load of an overloaded U-boat, nor was there a written policy in place prior to plaintiff's accident requiring employees to inform customers with overloaded U-boats to reduce their load. Kolomer acknowledged that after plaintiff's accident, he was not involved in attempting to evaluate how to avoid an incident similar to plaintiff's incident.

Kolomer also testified there are stickers posted on every U-boat which provide a "warning" to customers on how to push the U-boat and to have a clear view. Hidasi testified the training he received regarding the safe operation of

U-boats included instructions to push the U-boats from behind and to be careful when moving around.

In her certified answers to interrogatories, plaintiff stated Restaurant Depot had video of Perez-Hernandez's "over stacked" U-boat, although there was no video of the actual moment of contact. Restaurant Depot, in its certified answers to interrogatories, provided various documents, along with color photographs taken of plaintiff and the overloaded U-boat on the date of incident. Restaurant Depot's discovery responses did not mention video surveillance footage existed on the date of incident or any efforts were made to retain and preserve such footage. During the course of discovery, plaintiff's counsel sent correspondence to counsel for Restaurant Depot, informing him Restaurant Depot's answers to interrogatories denied the existence of a surveillance tape regarding the incident, despite plaintiff's deposition testimony otherwise. Plaintiff requested Restaurant Depot to provide a copy of the surveillance footage surrounding the incident but were informed that the surveillance footage had not been preserved. Concerning this issue, Hidasi also testified if an incident was not captured on camera, Restaurant Depot would not preserve any video.

After discovery ended, on July 12, 2023, Restaurant Depot moved for summary judgment. On July 19, after Restaurant Depot's summary judgment motion was filed, plaintiffs moved to re-open discovery and, for the first time, sought additional time to procure an expert liability report. Plaintiffs further moved to amend their complaint to assert a claim for the spoliation of evidence. On July 28, Vida Café moved for summary judgment.

On August 25, the trial court granted plaintiffs' motion to re-open and extend discovery and denied Restaurant Depot's motion for summary judgment. Plaintiffs' motion to amend their complaint to assert a claim for the spoliation of evidence was denied. The trial court order extending the discovery end date required plaintiffs to serve expert liability reports by a date certain and the discovery period was re-opened and extended approximately ninety days.

The trial court granted Vida Café's motion. The court found there were no genuine issues of material fact contesting Perez-Hernandez was an independent contractor and not an employee of Vida Café. The court found Vida Café provided Perez-Hernandez a 1099 form for the "set fees" paid to him for shopping services performed on a trip-by-trip basis. The court found other than providing a list of goods, Vida Café did not provide any instructions to Perez-Hernandez on how the work was to be performed. The court determined Perez-

10

Hernandez was not Vida Café's agent. The court further determined Perez-Hernandez did not have apparent authority from Vida Café. The court found an "employ[ee] is a person engaged to perform service for another employer" and "[t]he employee is subject to the employer's control and the control of physical conduct is necessarily required for such service in order to impose liability." The court determined "[Vida Café] did not control the conduct of [Perez-Hernandez]" and "[i]f one looks at the factors involved in making the analysis, [Perez-Hernandez] is an independent contractor. [Vida Café] did not exercise control over the details. [Perez-Hernandez], as a separate business, performed similar services for multiple other entities shopping for restaurants."

The court further found "[Vida Café] did not supply any tools or instrumentalities, [Perez-Hernandez] was paid on a 1099 form rather than as an employee and the services performed were ancillary to rather than part of the regular business of [Vida Café]. Furthermore, the parties did not believe they were in an [employer-employee] relationship."

On September 6, Restaurant Depot filed a motion for reconsideration of the orders granting plaintiffs' motion to re-open/extend discovery and denying its summary judgment motion. On September 22, the trial court denied Restaurant Depot's motion for reconsideration. Restaurant Depot moved for

11

leave to file an interlocutory appeal of the orders. We denied Restaurant Depot's motion.

On December 1, after the discovery period concluded, Restaurant Depot renewed its motion for summary judgment contending plaintiffs could not prevail on their negligence claims without an expert opinion, and plaintiffs never served a liability expert report. On January 18, 2024, the trial court granted Restaurant Depot's summary judgment motion.

The trial court found "[e]xpert testimony is required for a standard of care owed by [Restaurant Depot], as to its policies, procedures and protocols, if any, followed throughout the industry with regard to training of employees as to the safe use of U-boats by patrons and warnings and/or labels [] placed on U-boats to alert customers as to safety." The court stated "as to [p]laintiff's argument of constructive notice, the [c]ourt finds that there was no constructive notice in this case. There is no viable claim for spoliation of evidence as to the videotape." The court determined there was "no request for preservation of the evidence" and "there was no reasonable basis . . . to believe that the video showing operation of the U-boat by [Perez-Hernandez] . . . as he traversed the store before the incident was relevant, which would have placed Restaurant Depot in a position of understanding it should have preserved [the video]."

The court further determined "the facts demonstrate [Restaurant Depot] met with the [p]laintiff shortly after the incident, within moments of the incident, apparently, reviewed to see what they could find." Because Restaurant Depot "did not find the moment of incident [it] had no awareness of a necessity to preserve beyond that. The [c]ourt doesn't find that to be unreasonable. So I don't find that they would have breached any duty in that regard." The court found the "[m]ode of [o]peration argument . . . inapplicable to the case law as applied to the facts in this case" and granted Restaurant Depot's motion and entered an order dismissing plaintiffs' complaint.

Thereafter, plaintiffs moved for leave to appeal the trial court's order granting Restaurant Depot summary judgment which we denied. At plaintiffs' request, a proof hearing was held and judgment by default in the amount of $355,006 was entered against Perez-Hernandez on March 14, 2024 thereby finalizing the matter for appeal purposes.

On appeal, plaintiffs argue the trial court erred in granting summary judgment to Restaurant Depot and Vida Café because: (1) the court failed to recognize Restaurant Depot had a duty to preserve surveillance footage as there was a likelihood of litigation and Restaurant Depot's failure to preserve the footage entitled plaintiffs to an adverse inference charge which created genuine

issues of material fact precluding summary judgment; (2) expert testimony was not required to prove Restaurant Depot's negligence because it had a non-delegable duty to use reasonable care to protect plaintiff and breached this duty by failing to implement policies and procedures regarding overloaded U-boats and failing to properly train its employees to ensure proper use of the U-boats by its customers; and (3) there were genuine issues of material fact precluding the grant of summary judgment to Vida Café because it was vicariously liable for the negligence of Perez-Hernandez as a "borrowed agent."

## II.

We review the grant of summary judgment de novo, applying the same legal standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019). A court must determine whether there is a "genuine issue as to any material fact" when the evidence is "viewed in the light most favorable to the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (first quoting Rule 4:46-2(c); and then quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" and are reviewed de novo. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83 (2010).

A-2256-23

A.

We address plaintiffs' contention the trial court committed error in by failing to recognize Restaurant Depot breached their duty to preserve the video evidence surrounding the incident and applying an adverse interest against Restaurant Depot which precluded summary judgment to Restaurant Depot. We disagree.

"Spoliation of evidence in a prospective civil action occurs when evidence pertinent to the action is destroyed, thereby interfering with the action's proper administration and disposition." Cockerline v. Menendez, 411 N.J. Super. 596, 620 (App. Div. 2010) (quoting Aetna Life & Cas. Co. v. Imet Mason Contractors, 309 N.J. Super. 358, 364 (App. Div. 1998)). "[T]o a great extent our traditional approach to spoliation begins with identifying the spoliator, because that, in and of itself, will impact on the available and appropriate remedies." Robertet Flavors, Inc. v. Tri-Form Constr., Inc., 203 N.J. 252, 272 (2010) (citing Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 119-20 (2008)). "A [party] who destroys evidence interferes with [the opposing party's] ability to defend a lawsuit and right to discovery." Aetna Life, 309 N.J. Super. at 365 (quoting Hirsch v. Gen. Motors Corp., 266 N.J. Super. 222, 245 (Law Div. 1993)).

"The existence of a duty to preserve evidence is a question of law to be determined by the court." Cockerline, 411 N.J. Super. at 620 (citing Manorcare Health Servs., Inc. v. Osmose Wood Preserving, Inc., 336 N.J. Super. 218, 226 (App. Div. 2001)). "Such a duty arises when there is pending or likely litigation between two parties, knowledge of this fact by the alleged spoliating party, evidence relevant to the litigation, and the foreseeability that the opposing party would be prejudiced by the destruction or disposal of this evidence." Ibid. (citing Aetna Life, 309 N.J. Super. at 366). A plaintiff must make a "'threshold showing' that defendant improperly caused the loss of the evidence." Davis v. Barkaszi, 424 N.J. Super. 129, 148 (citing Cockerline, 411 N.J. Super. at 621).

Plaintiffs assert Restaurant Depot was the spoliator of critical evidence because it failed to preserve video surveillance surrounding the incident despite being notified of plaintiff's potential claim on the April 26, 2019 incident date. Defendant's manager Hidasi testified at his deposition the ability to preserve the video existed and policies were in place for the preservation of surveillance footage, stating "if there had been an incident such as theft or a customer accident or an employee accident, we would register the time code and the camera number and send it up to . . . corporate basically so that they can pull the video and save it."

However, the summary judgment record includes an Accident Investigation Form which noted there was no video surveillance of the incident. Hidasi further testified at his deposition that the video surveillance of the incident did not capture the actual moment when Perez-Hernandez allegedly struck plaintiff with the U-boat. At her deposition, plaintiff corroborated Hidasi's testimony where she confirmed the video she observed did not show her being struck by the U-boat. In addition, plaintiffs never served written notice on Restaurant Depot at any time after the incident demanding the preservation of the video surveillance evidence surrounding the incident.

Based on our review of the summary judgment record, we determine plaintiffs failed to satisfy their obligation to provide a threshold showing Restaurant Depot improperly caused the evidence to be lost or destroyed. Even if plaintiffs could make such a showing, we conclude insufficient evidence existed in the record a duty arose for Restaurant Depot to preserve the video evidence. It is undisputed that the video evidence was not erased or destroyed while litigation was pending. In addition, there is no evidence Restaurant Depot had any knowledge there would be "likely litigation" and the video evidence which the parties agree did not depict the actual accident event would be relevant in any future litigation. In addition, no dispute exists plaintiff executed a

17

"Medical Attention Waiver" indicating she believed her injury was minor and had no immediate need for medical attention which further supports Restaurant Depot's position future litigation was unlikely.

We further conclude, as did the trial court, Restaurant Depot was not actually or constructively placed on notice to preserve records surrounding the incident. Therefore, the trial court's finding Restaurant Depot did not breach any duty to plaintiff by not preserving video evidence was not error. Because we have determined the trial court did not commit error by finding Restaurant Depot did not breach its duty to preserve the video evidence, we further conclude the trial court's determination not to impose an adverse interest charge against Restaurant Depot was also not error.

B.

We now turn to plaintiffs' contention the trial court erred by finding the negligence claims against Restaurant Depot required expert opinion. Plaintiffs first assert Restaurant Depot's failure to preserve the video evidence foreclosed her from providing expert opinion since the expert would have to view the deleted videos in order to form an opinion. Since we have previously determined Restaurant Depot did not breach its duty to preserve the video evidence, we conclude this argument fails.

18

We now address plaintiffs' contention expert opinion is not required because Restaurant Depot owed a "non-delegable duty" to use reasonable care to protect plaintiff against known or reasonably discoverable dangers and breached such duty by failing: (1) to implement policies and procedures to address the risk of overloaded U-boats; and (2) to provide adequate and proper training to its employees to ensure proper use of the U-boats by its customers. We are unpersuaded.

N.J.R.E. 702 provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." In some cases, expert testimony becomes "necessary" to the trier of fact's proper functioning where a jury will need to determine areas of specialized knowledge and the party with the burden of establishing a proposition must proffer expert testimony. See Jerista v. Murray, 185 N.J. 175, 188 (2005).

When a layperson's common knowledge is not competent to establish the standard for measuring a defendant's conduct, expert testimony is required to establish the requisite standard of care. See Davis, 219 N.J. at 407. Likewise, expert testimony may be needed when "the matter dealt with is so esoteric that

jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Ibid. (quoting Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982)). In such cases, the jury "would have to speculate without the aid of expert testimony." Ibid. (quoting Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001)). In Davis, the Court concluded expert testimony was necessary to establish the standard of care for the inspection of fire sprinklers by contractors because such practice "constitutes a complex process involving assessment of a myriad of factors . . . beyond the ken of the average juror." Id. at 408 (quoting Giantonnio v. Taccard, 291 N.J. Super 31, 44 (App. Div. 1996)); see also Ford Motor Credit Co., LLC v. Mendola, 427 N.J. Super. 226, 239 (App. Div. 2012) (concluding expert testimony was necessary to assess whether a repair shop and car dealership had breached their duty because a car is a "complex instrumentality" the general public is unfamiliar with).

We conclude expert opinion is required concerning plaintiff's contention that Restaurant Depot owed her a "non-delegable" duty of reasonable care and breached such duty. We determine the training of employees with the appropriate safety standards for the operation of a U-boat and the question as to whether a business is negligent by failing to adopt policies and procedures to

train employees to recognize the improper and unsafe use of U-boats are not within the average ken of a jury. Formulation of these standards would require an expert with specialized knowledge of the industry standard in creating and adopting policies and procedures concerning supermarket safety, a recitation of the safety policies and employee training in such policies and the factual basis supporting Restaurant Depot breached those policies and procedures which proximately caused plaintiff's injuries. We conclude plaintiffs' failure to offer or submit this required expert opinion was fatal to their case against Restaurant Depot. For these same reasons, plaintiffs' contention the common knowledge doctrine applies and expert opinion is not necessary also fails. The trial court's rejection of plaintiff's contentions was not error.

In addition, to the best we can discern, plaintiffs also assert a premises liability theory against Restaurant Depot based on Restaurant Depot's "non-delegable duty" to use reasonable care to protect plaintiff from the risk of injury since she is a business invitee and Restaurant Depot breached this duty by "failing to not only to provide appropriate training, but also by failing to implement policies or procedures for its own employees regarding the use of its U-boats." Since we have previously determined expert opinion is required to

21

provide the standard relevant to the adoption of policies, procedures and employee training, we conclude this argument also fails.

C.

We now address plaintiffs' contention the trial court erred by granting Vida Café summary judgment. Specifically, plaintiffs assert summary judgment was inappropriate because Perez-Hernandez was a "borrowed agent" of Vida Café making it vicariously liable for his negligence.

Concerning the concept of vicarious liability in this context, a party "who expects to derive a benefit or advantage from an act performed on [their] behalf by another must answer for any injury that a third person may sustain from it." Galvao v. G.R. Robert Const. Co., 179 N.J. 462, 468 (2004) (quoting Carter v. Reynolds, 175 N.J. 402, 408 (2003)).

> [A]n employer is generally responsible for harm suffered by third parties through any negligent work-related acts of its employees. In some situations, an employer, known as a "general employer," loans one of its workers to another employer, known as a "special employer," for defined tasks or purposes. When such arrangements are created and the loaned or "borrowed" worker negligently injures someone, questions arise regarding whether the general employer is vicariously liable for that negligence, whether the special employer is liable, or whether both employers are liable.
>
> [Pantano v. New York Shipping Association, 254 N.J. 101, 111 (2023).]

Initially, we conclude the borrowed agent doctrine does not apply to the undisputed facts herein. In this instance, Perez-Hernandez did not work for a general employer which loaned him to Vida Café as the special employer. Even if we assume Perez-Hernandez—the sole employee of his shopping business—somehow could loan himself to Vida Café, in order to establish liability under the borrowed-employee doctrine, our courts apply a two-prong test: (1) the control test and (2) the business-furthering test. Galvao, 179 N.J. at 472-473. The control test can be shown by two methodologies. The first methodology is "on-spot" control, which is "the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done." Id. at 472, (quoting Wright v. State, 169 N.J. 422, 436-37 (2001)). As an alternative to direct evidence of "on-spot" control, parties can show an employer has "broad" control in any of three ways: based on (1) the "method of payment"; (2) who "furnishes the equipment"; and (3) the "right of termination." Ibid. "The retention of either on-spot, or broad, control by a general employer would satisfy this first prong." Ibid. A "lack of control ends the inquiry." Id. 179 N.J. at 474.

Although the Court in Pantano held the special employee test is fact sensitive and is presumptively a jury question, it further held the trial court is

capable of deciding the borrowed-employee issue when the evidence is so one-sided it warrants judgment in a moving party's favor as a matter of law. 254 N.J. at 106.

Based on our review of the summary judgment record, we conclude there are no genuine issues of material fact showing Vida Café exhibited control of Perez-Hernandez to satisfy prong one of Galvao and, therefore, Vida Café was entitled to judgment as a matter of law. The undisputed facts indicate Perez-Hernandez travelled to Restaurant Depot alone on the date of the incident at a time he chose and exclusively managed the methodology of the shopping. We thus conclude Vida Café did not have "on spot" control of Perez-Hernandez.

We further conclude there are no genuine issues of material fact in the summary judgment record showing Vida Café had broad control of Perez-Hernandez. Rule 4:46-2(c)'s "genuine issue [of] material fact" standard mandates the opposing party do more than "point[ ] to any fact in dispute" in order to defeat summary judgment. Brill, 142 N.J. at 529. Under this standard, once the moving party presents sufficient evidence in support of the  motion, the opposing party must "demonstrate by competent evidential material that a genuine issue of fact exists[.]" Globe Motor Company v. Igdalev, 225 N.J 469, 479-480 (2016) quoting Robbins v. Jersey City, 23 N.J. 229, 241

(1957); see also Brill, 142 N.J. at 529 (noting opposing party should "come forward with evidence that creates a 'genuine issue as to any material fact challenged'" (quoting R. 4:46-2)).

The undisputed facts in the summary judgment record exhibit Perez-Hernandez agreed to shop for Vida Café on an "as needed" basis and utilized Vida Café's "Mamajuana Café" membership card to gain entry into the Restaurant Depot warehouse on the date of incident but the record also exhibits Perez-Hernandez shopped at Restaurant Depot for other entities. The undisputed facts also show: (1) Perez-Hernandez did not utilize Vida Café's credit card on the date of incident; (2) Vida Café did not possess any records of reimbursements or direct payments to Perez-Hernandez for services performed on the date of incident; (3) Perez-Hernandez typically shopped for Vida Café on a Tuesday or Thursday and the incident occurred on a Friday; (4) Vida Café never provided Perez-Hernandez with any equipment or other items; (5) Vida Café could not "terminate" Perez-Hernandez because no evidence existed he was an actual employee of Vida Café; and (6) Vida Café paid Perez-Hernandez by way of a 1099 form in 2019 and all other years he provided Vida Café services. We conclude plaintiffs' rebuttal evidence based on the singular point that Perez-Hernandez utilized Vida Café's membership card to gain access to Restaurant

Depot on the date of the incident was insufficient to create a "genuine" issue of fact showing Perez-Hernandez was a "borrowed employee" in order to impose vicarious liability on Vida Café.

To the extent we have not addressed any of plaintiffs' remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

26

A-2256-23